ST. LOUIS UNION TRUST COMPANY AND JAMES H. GROVER, TRUSTEES UNDER THE LAST WILL AND TESTAMENT OF E. W. GROVE, DECEASED, v. HARDIN FOSTER.

(Filed 17 March, 1937.)

1. **Deeds § 16—Restrictive agreements applicable to part of tract held not enlarged by subsequent deed to entire tract subject to agreement.**

    The owner of a five-hundred-acre tract of land executed an agreement imposing building and residential restrictions on a thirteen-acre tract included in the larger tract. Thereafter he conveyed the entire five-hundred-acre tract subject to all the restrictions, conditions, and stipulations contained in the agreement, and also certain general restrictions set out in the conveyance. Part of the five-hundred-acre tract could not be developed for residential purposes, the land being mountainous and the cost of installing water and sewer being prohibitive. *Held:* The conveyance did not enlarge the restrictions to cover the entire five-hundred-acre tract, but conveyed the land subject only to the residential restrictions on the thirteen-acre tract and the general restrictions set out in the conveyance, it being obvious that the owner did not intend the residential restrictions to apply to the entire tract.

**2. Same: Mortgages § 42—Purchaser at foreclosure takes title free from restrictions placed on property subsequent to mortgage.**

A large tract of land was mortgaged subject to restrictive covenants applicable only to a small part of the entire tract. Thereafter the mortgagor conveyed the entire tract subject to the mortgage. The purchaser and subsequent owners attempted to further develop the tract for residential purposes, plotted part of the tract, and sold certain lots by deeds containing restrictive covenants in accordance with a general plan of development, some of the lots so sold being released from the mortgage on the entire tract. Thereafter the mortgage was foreclosed and title under the sale conveyed to plaintiffs, trustees for the deceased original owner. *Held:* The title of the purchaser at a foreclosure sale relates back to the date of the mortgage, and plaintiffs acquired the land free from the restrictions imposed by intervening owners subsequent to the execution of the mortgage.

APPEAL by defendant from *Phillips, J.,* at December Term, 1936, of BUNCOMBE. Affirmed.

The plaintiffs and defendant entered into an agreement, on 30 November, 1936, by which plaintiffs agreed to sell to defendant a certain piece of land (shown on map as "Foster lot"). The defendant was willing to carry out his contract, but alleged that plaintiffs could not convey to him a marketable title. This is a submission of controversy without action. N. C. Code, 1935 (Michie), sec. 626.

The facts in regard to same are as follows: Paragraph 1. "In 1918 E. W. Grove and one W. B. Meacham were the owners of adjoining areas of land located in Buncombe County, a short distance north of the city of Asheville, the land of Grove lying on the east side of what was and is known as Charlotte Street Extension (which land appears upon the annexed plat designated as 'Property of Grove described in Grove-Meacham Agreement'), and the land of Meacham lying on the west side of said Charlotte Street Extension. On 8 October, 1918, Grove and Meacham, with the joinder of their respective wives, entered into the following agreement, which is duly recorded in the office of the register of deeds for said county, in Deed Book 224, at page 147."

The agreement set forth contains certain restrictions imposed upon a thirteen-acre tract of land belonging to Grove:

Paragraph 2. "Thereafter, on 1 April, 1926, by deed recorded in the office of the register of deeds, in Deed Book 345, at page 366, the said Grove conveyed to Floralina Realty Corporation a tract of approximately five hundred (500) acres of unimproved land, hereinafter referred to as 'Kimberly Heights,' the boundaries of which appear upon the plat annexed hereto. The said Floralina Realty Corporation was organized by its principal stockholder, one Arthur M. Griffing, for the purposes of developing the said 'Kimberly Heights,' or portions thereof, from time to time, as a residential subdivision. The tract conveyed to

said Floralina Realty Corporation by Grove included the area belonging to said Grove described in the aforementioned agreement between Grove and Meacham. The deed to Floralina Realty Corporation contains in its *habendum* clause the following language:

" 'To have and to hold the above described land and premises, together with all the privileges and appurtenances thereunto belonging, or in anywise appertaining, unto the party of the second part, its successors and assigns, forever; subject, however, to the following restrictions, conditions, and stipulations, that is to say:

" 'All the restrictions, conditions, and stipulations contained in a certain agreement between E. W. Grove and W. B. Meacham and wife, recorded in the office of the register of deeds for Buncombe County, North Carolina, in Book No. 224, page 147; and also subject to the following restrictions:

" 'And the said party of the second part, for itself, its successors, and assigns, doth covenant to and with the said parties of the first part, their heirs, executors, administrators, and assigns, as follows:

" '(1) That they will not erect, license, or suffer to be erected or maintained on the above described land, or any part thereof, any house or building to be used as a sanitarium or hospital, or at any time permit or suffer to be used any house or building erected thereon for any such purpose, and will not, during the term of twenty-one (21) years from the date hereof, lease, sell, or convey said land, or any part thereof, or any building thereon, to a Negro or person of any degree of Negro blood, or any person of bad character;

" '(2) That the foregoing covenants shall be covenants running with the land, and shall be kept by the said party of the second part, its successors and assigns.

" '(3) To secure the unpaid balance of the purchase price of said property, Floralina Realty Corporation executed to Commerce Union Trust Company, as trustee, a first lien purchase money deed of trust embracing said property, which deed of trust, dated 1 April, 1926, is recorded in the office of the aforesaid register of deeds, in Deed of Trust Book 239, at page 283. It contains the following language with reference to restrictions on the property described: "This deed in trust is made and accepted subject to all the conditions and restrictions referred to and contained in deed of E. W. Grove and wife, A. G. Grove, to the party hereto, of the first part, bearing even date with these presents, reference to which deed is hereby made for a full recitation of said conditions and restrictions."

" '(4) By deed dated 1 July, 1926, the Floralina Realty Corporation conveyed the entire Kimberly Heights property, subject to the deed of trust referred to in paragraph 3 hereof, to the said Arthur M. Griffing,

individually, which deed is recorded in the office of said register of deeds, in Deed Book 355, at page 470. With reference to restrictions, the deed provides: "Subject, however, to the restrictions, conditions, and stipulations as contained in deed from E. W. Grove and wife to Floralina Realty Corporation hereinbefore referred to" (which deed is that described in paragraph 2 hereof).

" '(5) At the time of the conveyance to Floralina Realty Corporation by Grove, and at the time of conveyance to Griffing by Floralina Realty Corporation, the said Kimberly Heights property was unimproved, heavily wooded, and inaccessible to vehicular traffic except over what are known as Scenic Highway, Sunset Drive, and Grovewood Road; as appear on the plat annexed. The first two were and are public roads, used primarily for recreational automobile drives and horseback rides; Grovewood Road was, and is, also a public road, used as a rear or secondary entrance to Grove Park Inn, which lies near the southwest corner of the property. As it is shown by said plat, the property extends from Charlotte Street Extension east for a distance of approximately 8,000 feet, horizontal measurement. Across the center of the property, running north and south, lies a ridge of mountains, the two most prominent peaks of which are known as Patton Mountain, near the south boundary, and Mount Pleasant, near the north boundary. Patton Mountain lies almost directly behind the above Grove Park Inn. The Mount Pleasant-Patton Mountain ridge is joined by a second ridge, unnamed, running east to the extreme eastern boundary. The top of Patton Mountain lies about 800 feet, and the top of Mount Pleasant about 600 feet above Charlotte Street Extension, on the west boundary. Intermediate points along the ridge vary slightly from these elevations. The ridge running east is of approximately the same elevation as the Patton Mountain-Mount Pleasant ridge. From Charlotte Street Extension eastwardly there is a gentle rise for about 2,000 feet, then a sharp rise to the top of the ridge. East of the Patton Mountain-Mount Pleasant ridge, and on either side of the joining ridge, is a sharp drop to the north and south boundaries.

" '(6) Shortly after its conveyance to him, the said Griffing caused a portion of said Kimberly Heights, extending from Charlotte Street approximately 2,400 feet eastwardly and containing about sixty-five acres, to be platted into 162 lots, and said lots offered for sale to the public. The lines of the platted area are indicated on the annexed plat. Three maps were platted of this area, were made and placed on record by said Griffing: (a) "First Unit"—recorded in Book of Plats 12, at page 56; (b) "Part of Second Unit"—recorded in Book of Plats 13, at page 71; (c) "First Unit and Part of Second Unit," recorded in Book of Plats 14, at page 5. "First Unit and Part of Second Unit" (c), is merely the

combination of (a) and (b). In addition to the lots as subdivided, streets and alleys, each plat showed a building line for all lots, the same varying from twenty to fifty feet. The said Griffing also installed sewer and water lines available to all but a small number of lots within said platted area, and laid out and constructed streets as appears on the annexed plat. During his term of ownership, Griffing sold and deeded to purchasers a total of fourteen (14) lots within the platted area; of this number twelve (12) were duly released by the said Commerce Union Trust Company, trustee, from the lien of the deed of trust described in paragraph 3 hereof. Each of the deeds from Griffing contained the following language with reference to restrictions:

" ' "To have and to hold the above described land and premises, with all the appurtenances thereunto belonging or in anywise appertaining; unto the said party of the second part, her heirs, successors, and assigns forever, subject to the restrictions, conditions, and stipulations hereinafter set forth, to wit:

" ' "Whereas, the lot or parcel of land hereinbefore described, a part of a block of land, as shown on the plat hereinabove specifically referred to, the property of the party of the first part and its successors and assigns, which said land within said block has been divided into parcels or lots, and laid off and designed to be used exclusively for residential purposes; and whereas, the parties hereunto desire, for the benefit of their own property and for the benefit of future purchasers and owners of the land shown within the lines of said block, that the same shall be developed, and for a time hereafter used exclusively for private residential purposes:

" ' "Now, therefore, the said party of the second part, for herself and her heirs, successors, and assigns, as follows:" (Setting forth certain restrictions.)

" '(7) In 1927, there having been a default under the terms of the deed in trust from Floralina Realty Corporation to Commerce Union Trust Company, trustee, the said trustee foreclosed the same, and deeded the property, excepting those portions previously released by it to lot purchasers from the said Griffing, to Griffing's Kimberly Heights, Incorporated, a corporation which was caused to be organized by the said Arthur M. Griffing for the purpose of developing the property further under the plans and designs theretofore conceived by the said Griffing. The said Griffing was at the time of the organization and thereafter the principal stockholder of the said Griffing's Kimberly Heights, Incorporated. The deed to the said Griffing's Kimberly Heights, Incorporated, was dated 21 May, 1927, and recorded in the office of the aforesaid register of deeds, in Deed Book 374, at page 135. The said deed contains the following provisions with reference to restrictions:

" ' "Subject to all conditions and restrictions referred to and contained in deed of E. W. Grove and wife, A. G. Grove, to Floralina Realty Corporation, bearing date 1 April, 1926, and recorded in the office of the register of deeds for Buncombe County, North Carolina, in Book of Deeds ......, at page ......, reference to which deed is hereby made for a full recitation of said restrictions and conditions."

" '(8) By virtue of a refinancing agreement with the plaintiffs herein, who were the holders of the unpaid notes of the said Floralina Realty Corporation, the payment of the bid of Griffing's Kimberly Heights, Incorporated, made in the aforesaid foreclosure sale, was deferred, evidenced by promissory notes and secured by a first lien purchase money deed of trust embracing the property conveyed by said Commerce Union Trust Company, trustee, executed by Griffing's Kimberly Heights, Incorporated, to Commerce Union Trust Company, as trustee, dated 21 May, 1927, and recorded in the office of said register of deeds, in Book of Deeds and Trust 266, at page 1. This deed of trust contains the following provision with reference to restrictions:

" ' "Subject to all conditions and restrictions referred to and contained in deed of E. W. Grove and wife, A. G. Grove, to Floralina Realty Corporation bearing date 1 April, 1926, and recorded in the office of the register of deeds for Buncombe County, N. C., in Book of Deeds ......, at page ......, reference to which deed is hereby made for a full recitation of said restrictions and conditions."

" '(9) Between 21 May, 1927, and 31 October, 1931, Griffing's Kimberly Heights, Incorporated, conveyed to purchasers ninety-three (93) lots in the aforementioned platted area, of which number sixty-four (64) were released by the trustee from the lien of the deed of trust described in paragraph 8 hereof. Except as hereinafter otherwise stated, deeds from Griffing's Kimberly Heights, Incorporated, for all of the lots which it conveyed contained the same restrictions as those of the deeds from Griffing, as set out in paragraph 6 hereof. The blanks pertaining to street frontage and minimum building cost of residence were filled in according to the location and size of the lot conveyed. The minimum building cost requirement in Griffing's Kimberly Heights, Incorporated, deeds varied from $5,000 to $24,000, the average being $7,886. Deeds for twenty (20) of the ninety-three (93) lots, located at the extreme northeast corner of the platted area in what was designated as Block "L," contained no minimum building cost requirements, although providing all of the remaining restrictions. Deeds for five (5) lots in scattered portions of the platted area contained no restrictions of any nature. In addition to the platted lots, Griffing's Kimberly Heights, Incorporated, also, in four instances, conveyed land outside the platted area totaling approximately nineteen (19) acres. In one of the conveyances, under this

classification, all of the standard restrictions except the minimum building cost requirement were included; in the second only paragraphs 1, 2, 3, 8, and 9 of the standard restrictions were included; the third conveyance was made subject only to the restrictions contained in the deed of trust from Griffing's Kimberly Heights, Incorporated, to Commerce Union Trust Company, trustee (described in paragraph 8 hereof); and the fourth conveyance was made subject to no restrictions of any nature. Of these four conveyances in the unplatted area, two, aggregating two acres, were released by the trustees from the lien of Griffing's Kimberly Heights, Incorporated, deed of trust.

" '(10) In October, 1931, default having been made under the terms of deed of trust from Griffing's Kimberly Heights, Incorporated, to Commerce Union Trust Company, trustee, foreclosure was had and the property described in the same, excepting such portions as had theretofore been released by the trustee, was duly conveyed by the trustee to the plaintiffs herein, by deed dated 31 October, 1931, and recorded in the office of the said register of deeds, in Book of Deeds 444, at page 421. The said deed provides, with respect to restrictions, the following: "Subject to all conditions and restrictions referred to and contained in deed of E. W. Grove and wife, A. G. Grove, to Floralina Realty Corporation, bearing date 1 April, 1926, and recorded in the office of the register of deeds for Buncombe County, North Carolina, in Book of Deeds 345, at page 366, reference to which deed is hereby made for a full recitation of said restrictions and conditions."

" '(11) By virtue of the foreclosure and deed mentioned in preceding paragraph hereof, the plaintiffs became the owners of the entire unplatted area of said Kimberly Heights (including the "Foster lot" hereinafter referred to), with the exception of the aforementioned two tracts previously released by the trustee; plaintiffs thereby also became the owners of eighty-six (86) lots within the platted area, the release of which had not been had or provided for.

" '(12) Since the conveyance to the plaintiffs, neither Floralina Realty Corporation, Arthur M. Griffing, nor Griffing's Kimberly Heights, Incorporated, has had any interest in or claim to any part of the Kimberly Heights property. Floralina Realty Corporation was duly dissolved on 23 July, 1931, and the charter of Griffing's Kimberly Heights, Incorporated, forfeited by the Commissioner of Revenue of North Carolina on 1 March, 1930, and neither of said corporations has since said dates maintained any organization or undertaken to transact any business. Other than in that portion of the property which has been referred to as the "Platted Area," neither Floralina Realty Corporation, Griffing, nor Griffing's Kimberly Heights, Incorporated, made improvements, although the latter made, or caused to be made, preliminary

designs for further subdivision of portions of the unplatted area, but which designs were never recorded or carried out. At the present time two tracts of 1 acre each, outside the platted area, are owned by purchasers under the title of Griffing's Kimberly Heights, Incorporated. Seventy-six (76) lots within the platted area are now owned by purchasers under the title of Griffing and Griffing's Kimberly Heights, Incorporated; of these lots, twenty-six (26) have been improved by residences erected at various times since April, 1926, under the design of the Griffing and Griffing's Kimberly Heights, Incorporated, restrictions. Fifteen (15) residences front on Griffing Boulevard, six (6) on Lynwood Road; four (4) on Blackwood Road; and one on Charlotte Street Extension. Since the foreclosure sale and conveyance to the plaintiffs, referred to in paragraph 10 hereof, the plaintiffs have made no improvements of either the unplatted area or of the lots conveyed to them by the trustee; nor have they formed or devised any common or general scheme of development for the same or any part thereof.

"'(13) On 30 November, 1936, the plaintiffs and the defendant entered into a certain written contract, by the terms of which the plaintiffs agreed to sell, and the defendant agreed to buy, a certain parcel or lot of land within the unplatted area of said Kimberly Heights shown on the attached plat as the "Foster lot"; that by the terms of such contract, copy of which is attached hereto, marked "Exhibit A," and made a part of this agreed statement of facts, the plaintiffs contracted and agreed to convey said property free and clear of all liens, encumbrances, and restrictions, except certain taxes and rights of way, and the following restrictive covenants: "And, the said purchaser, for himself, his heirs and assigns, does covenant to, and with the said vendors, their successors and assigns, as follows: First, that he will not erect, license, or suffer to be erected or maintained on the above described land, or any part thereof, any house or building to be used as a sanitarium or hospital, or at any time permit or suffer to be used any house or building erected thereon for any such purpose, and will not, during the term of twenty-one years (from 1 April, 1926), lease, sell, or convey said land, or any part thereof, or any building thereon, to a Negro, or person of any degree of Negro blood, or any person of bad character; second, that the foregoing covenants shall be covenants running with the land, and shall be kept by the said purchaser, his heirs and assigns."

"'(14) That, on or about 5 December, 1936, in accordance with the terms of the contract hereinbefore referred to, the plaintiffs tendered to the defendant a good and sufficient deed for said property, said deed purporting to convey the property free and clear from all restrictive covenants, excepting those referred to and set out in said contract and in paragraph 13 hereof.

" '(15) It is agreed that the plaintiffs are the duly designated, qualified, and acting trustees under the will of E. W. Grove, who died testate on or about 27 January, 1927, and that plaintiffs, as trustees, have full power to convey and sell real estate. It is further agreed that the deed as tendered to defendant is a sufficient deed for the property described in said contract, and that plaintiffs, as such trustees, are vested with a clear and marketable title to said property within the contemplation of said contract, except as to the restrictions hereafter specified, but the said defendant has refused to accept said deed and to pay the purchase price for said lot or parcel of land, contending that the plaintiffs' title to the said lot is not free and clear of all liens, encumbrances, and restrictions by reason of the fact that it is burdened with (a) the restrictions contained in the agreement between E. W. Grove and W. B. Meacham, as set forth in paragraph 1 hereof, and (b) the restrictions contained in the deeds from Arthur M. Griffing and Griffing's Kimberly Heights, Incorporated, to purchasers of lots within what has been hereinbefore designated as the "platted area" of Kimberly Heights.

" '(16) It is further agreed that if the court shall be of opinion with the plaintiffs upon the foregoing facts, then judgment shall be entered for the plaintiffs; and if the court shall be of opinion for the defendant, then judgment shall be entered for the defendant.

ADAMS & ADAMS,
*Attorneys for Plaintiffs.*
T. CARLISLE SMITH, JR.,
*Attorney for Defendant.*' "

The property in controversy is set forth in annexed plat, designated as "Property of Grove described in Grove-Meacham Agreement," made by Arnold H. Vanderhoof, consulting engineer.

The judgment in the court below was as follows:

"This cause coming on to be heard and being heard before the undersigned judge of the Superior Court at the regular December, 1936, Term of said court, at Asheville, Buncombe County, upon the agreed statement of facts of the parties, submitted under the terms of section 626 of the Consolidated Statutes of North Carolina, and from said agreed statement of facts it appearing to the court, and the court hereby so finding and holding:

"1. That the provisions of the deed from E. W. Grove to Floralina Realty Corporation, set forth in paragraph 2 of said statement of facts, do not operate in anywise to extend or enlarge the restrictions, conditions, and stipulations contained in the agreement between the said Grove and W. B. Meacham, set forth in paragraph 1, or to impose the same upon any part of the land described in said deed save that portion which

is particularly described in said agreement; that the restrictions contained in said agreement, accordingly, do not affect or encumber the *locus in quo,* and the same is free and clear thereof.

"2. That the restrictions set out and imposed in the various deeds from Arthur W. Griffing and Griffing's Kimberly Heights, Inc., to purchasers of lots in the 'platted area' of Kimberly Heights, which restrictions are set forth in paragraph 6 of the statement of facts, in nowise bind, affect, or encumber any of the land within said Kimberly Heights now owned by the plaintiffs under the trustee's deed referred to in paragraph 10; that, accordingly, none of said restrictions affect or encumber the *locus in quo,* the same being a portion of said land conveyed under said trustee's deed.

"It is therefore ordered, decreed, and adjudged that the plaintiffs are vested with a good and marketable title, within the terms and contemplation of the contract between the parties, free and clear of all liens, encumbrances, and restrictions, to the land and premises described in said contract and referred to in the statement of facts herein as the 'Foster lot'; and it is further ordered and adjudged that the defendant be and is hereby required specifically to perform said contract and to accept the deed to said land heretofore tendered by the plaintiffs, for the consideration and upon the terms of the contract.

"It is further ordered that the costs hereof be taxed against the defendant.

"This 18 December, 1936.

F. DONALD PHILLIPS,
*Judge Presiding.*"

The defendant excepted, assigned error, and appealed to the Supreme Court, on the ground that the court below erred in signing the judgment appearing in the record.

*Adams & Adams for plaintiffs.*
*T. Carlisle Smith, Jr., for defendant.*

CLARKSON, J. The defendant's *first* question involved is as follows: "Is the whole of a boundary of land, containing five hundred acres, subject to restrictions previously imposed upon a small portion thereof, containing approximately thirteen acres, by reason of the fact that the five-hundred-acre boundary is conveyed 'subject to all the conditions, restrictions, and stipulations' contained in the agreement creating the restrictions upon the thirteen-acre tract?" We think not.

The language in the agreed statement of facts as to certain of the restrictions in the deed is as follows: "Subject, however, to the following

restrictions, conditions, and stipulations, that is to say: All the restrictions, conditions, and stipulations contained in a certain agreement between E. W. Grove and W. B. Meacham and wife, recorded in the office of the register of deeds for Buncombe County, North Carolina, in Book No. 224, page 147; and also subject to the following restrictions: And the said party of the second part, for itself, its successors and assigns, doth covenant to and with the said parties of the first part, their heirs, executors, administrators, and assigns, as follows: (1) That they will not erect, license, or suffer to be erected or maintained on the above described land, or any part thereof, any house or building to be used as a sanitarium or hospital, or at any time permit or suffer to be used any house or building erected thereon for any such purpose, and will not, during the term of twenty-one (21) years from the date hereof (1 April, 1926) lease, sell, or convey said land, or any part thereof, or any building thereon, to a Negro or person of any degree of Negro blood, or any person of bad character; (2) that the foregoing covenants shall be covenants running with the land, and shall be kept by the said party of the second part, its successors and assigns."

This language is clear. When the entire 500-acre tract was sold there was a restricted agreement on the 13 acres between Grove and Meacham. This restriction in no way applied to the land sold, and could not be extended or enlarged beyond the particular area described in the Grove-Meacham agreement. The land sold was subject to this restriction in the 13 acres, in the same manner as if a deed were made subject to an existing lien, deed of trust, or mortgage on a portion of the property that was conveyed.

The Grove-Meacham agreement is in no way operative on the Foster lot—the *locus in quo* which is in controversy. The Grove-Meacham restriction is separate and distinct. It will be noted that in defendant's contract for the purchase of the *"locus in quo"* from the plaintiffs, the above restrictions as to sanitarium or hospital and sale to Negroes, etc., are agreed to be restrictions in the conveyance to him. See *Pepper v. Development Co., ante,* 166.

The defendant's *second* question involved is as follows: "Where approximately one-eighth of a five-hundred-acre boundary is subdivided and developed into residential lots, and about one-half of such lots are sold under uniform restrictions adopted pursuant to a general plan or scheme of development for the subdivided area, and thereafter the unsold lots and the undeveloped portion of the boundary is foreclosed under a preëxisting deed of trust and reconveyed to the estate of the owner of the original boundary, what effect, if any, do such restrictions have upon the land so reconveyed?" We cannot see, under the facts and circumstances of the case, that the restrictions have any effect on the land reconveyed on foreclosure.

1. On 1 April, 1926, Grove conveyed to Floralina Realty Corporation, deed duly recorded, the tract of 500 acres with the restrictions above set forth to certain unimproved land, afterwards known as "Kimberly Heights." Included in the deed was the area belonging to Grove described in the agreement between Grove and Meacham and the deed made subject to same.

2. On 1 April, 1926, the Floralina Realty Corporation made a deed in trust to Commerce Union Trust Company to secure the purchase money, which was duly recorded.

3. On 1 July, 1926, the Floralina Realty Corporation made a deed to Arthur M. Griffing, which was duly recorded, subject to the deed of trust before mentioned. Griffing, shortly after the conveyance to him, caused a portion of Kimberly Heights to be platted into 162 lots and offered them for sale with certain restrictions.

In 1927, there having been a default under the terms of the deed in trust from Floralina Realty Corporation to Commerce Union Trust Company, trustee, the said trustee foreclosed the same, and deeded the property, excepting those portions previously released by it to lot purchasers from the said Griffing, and Griffing's Kimberly Heights, Inc.

By virtue of a refinancing agreement with the plaintiffs herein, who were the holders of the unpaid notes of the said Floralina Realty Corporation, the payment of the bid of Griffing's Kimberly Heights, Incorporated, made in the aforesaid foreclosure sale, was deferred, evidenced by promissory notes and secured by a first lien purchase money deed of trust embracing the property conveyed by said Commerce Union Trust Company, trustee, executed by Griffing's Kimberly Heights, Incorporated, to Commerce Union Trust Company, as trustee, dated 21 May, 1927, and duly recorded.

Between 21 May, 1927, and 31 October, 1931, Griffing's Kimberly Heights, Incorporated, conveyed to purchasers ninety-three (93) lots in the platted area, of which number sixty-four (64) were released by the trustee from the lien of the deed of trust above set forth.

In October, 1931, default having been made under the terms of deed of trust from Griffing's Kimberly Heights, Incorporated, to Commerce Union Trust Company, trustee, foreclosure was had and the property described in the same, excepting such portions as had theretofore been released by the trustee, was duly conveyed by the trustee to the plaintiffs herein, by deed dated 31 October, 1931, and duly recorded.

The said deed provides, with respect to restrictions, the following: Subject to all conditions and restrictions referred to and contained in deed of E. W. Grove and wife, A. G. Grove, to Floralina Realty Corporation, bearing date 1 April, 1926.

By virtue of the foreclosure and deed before mentioned, the plaintiffs became the owners of the entire unplatted area of said "Kimberly

Heights" (including the "Foster lot"), with the exception of the before mentioned two tracts previously released by the trustees; plaintiffs thereby also became the owners of eighty-six (86) lots within the platted area, the release of which had not been had or provided for.

At the present time two tracts of 1 acre each, outside the platted area, are owned by purchasers under the title of Griffing's Kimberly Heights, Incorporated. Seventy-six (76) lots within the platted area are now owned by purchasers under the title of Griffing and Griffing's Kimberly Heights, Incorporated; of these lots, twenty-six (26) have been improved by residences erected at various times since April, 1926, under the design of the Griffing and Griffing's Kimberly Heights, Incorporated, restrictions. Fifteen (15) residences front on Griffing Boulevard, six (6) on Lynwood Road; four (4) on Blackwood Road; and one on Charlotte Street Extension. Since the foreclosure sale and conveyance to the plaintiffs, referred to, the plaintiffs have made no improvements of either the unplatted area or of the lots conveyed to them by the trustee; nor have they formed or devised any common or general scheme of development for the same, or any part thereof.

All the conveyances are subject to the restrictions set forth in the Grove-Meacham agreement, and also in the restrictions heretofore mentioned in deed from Grove to Floralina Realty Corporation.

We do not see how the restrictions imposed by Griffing or Griffing's Kimberly Heights, Inc., in deeds to their purchasers can bind or affect the title of the plaintiffs acquired under foreclosure of the purchase money deeds of trust made prior thereto.

In Jones on Mortgages, Vol. 3 (8th Ed.), p. 623, it is said: "Title acquired by foreclosure relates back to the date of the mortgage, so as to cut off intervening equities and rights."

In Wiltsie on Mortgage Foreclosure, Vol. 2 (4th Ed.), pp. 1030-31, we find: "The title of the purchaser at a sale under a decree of foreclosure relates back to the date of the delivery of the mortgage, as against all intervening purchasers and encumbrancers who were made parties to the action, or who became interested in the premises *pendente lite.* All encumbrances and liens, and all conditions, reservations, and restrictions which the mortgagor may have imposed upon the property subsequently to the execution of the mortgage will be extinguished."

In *Leak v. Armfield,* 187 N. C., 625 (628), it is said: "If subsequent judgment creditors or litigants over the equity of redemption could 'tie up' a first mortgage and affect its terms, it would seriously impair a legal contract."

The 500 acres owned by Grove and which he sold did not provide a general scheme or plan of development. It would have been folly for Grove to have had a general scheme or plan, as only a small portion of

the land was fit for residential development. In the 500-acre tract there was a small area that could be used for residential purposes on which modern conveniences, sewer, water, etc., could be put, and on the balance of the land to have such conveniences, it would be at a prohibitive cost. The 500 acres deeded were unimproved, heavily wooded, and almost all inaccessible to vehicular traffic, mountainous, and very little of the area fitted for residential purposes.

It is a matter of common knowledge that large tracts of land are purchased and the development is gradual in blocks and otherwise. We think it was never the intention of Grove that the restrictions and conditions in the Grove-Meacham agreement block would extend to the balance of the land.

The defendant in his brief says: "The questions raised by this appeal are largely ones of fact, the law applicable to such facts being well settled."

On the agreed facts, we think the court below was correct in its holding.

For the reasons given, the judgment of the court below is

Affirmed.