DIXIELAND REALTY COMPANY, A CORPORATION, PETITIONER, v. JOE R. WYSOR AND WIFE, ALICE WYSOR; HAWTHORNE SALES COMPANY, INC., A CORPORATION; SAM WARE; QUENTIN BOLLINGER T/A BOLLINGER ELECTRIC COMPANY; NOLEN CONCRETE SUPPLY COMPANY; BESS BROTHERS, INC., RAINBOW PAINT STORE, J. A. BROWN, WITTEN SUPPLY COMPANY, AND NIXON EXTERMINATING COMPANY, B. B. BANNER, JR., DEFENDANTS.

(Filed 13 December, 1967)

1. **Mortgages and Deeds of Trust § 28—**

The grantor in a deed of trust may purchase the property at the foreclosure sale conducted by the trustee.

2. **Mortgages and Deeds of Trust § 41—**

Ordinarily, the purchaser at the foreclosure sale of a deed of trust acquires title free from subsequent encumbrances.

3. **Mortgages and Deeds of Trust § 33—**

Surplus remaining in the hands of the trustee after payment of the debt secured by the deed of trust and costs may be turned over by the trustee to the clerk of the Superior Court. G.S. 45-21.31(b).

4. **Estoppel § 1—**

Estoppel by deed is recognized in this State when the grantor intends to convey and the grantee expects to acquire a particular estate, even though the deed contains no technical covenants or warranties.

5. **Estoppel § 2; Mortgages and Deeds of Trust § 41—**

The owners of land executed a deed of trust thereon to secure a debt and executed another deed of trust, subsequently recorded, to their vendor. The deed of trust first registered was foreclosed and the land was purchased by the trustors. *Held:* The after acquired title enures to the benefit of the cestui in the secondly recorded deed of trust.

6. **Marshalling—**

The doctrine of marshalling of assets ordinarily applies when a common debtor holds separate funds and one creditor has a lien on both, while the other has a lien on one only; the doctrine does not apply if the holder of the superior lien would be forced to expose himself to the possibility of costly litigation or suspend his immediate right to proceed against the fund subject to his lien.

**7. Same; Mortgages and Deeds of Trust § 33—— Where trustor purchases at foreclosure of first recorded deed of trust, cestui in a second deed of trust is entitled to payment of his debt out of surplus.**

The owners of land executed a deed of trust securing a debt to third parties, which deed of trust was first recorded. The owners also executed a deed of trust to their vendor, which deed of trust was subsequently recorded. Subsequently liens were filed against the parties by laborers and materialmen. The deed of trust first recorded was foreclosed and bought in by the original owners in an amount exceeding the debt secured by that instrument, and the trustee paid the surplus into the hands of the clerk. *Held:* The doctrine of marshalling does not apply, and the cestui in the second recorded deed of trust is entitled to the amount of its debt secured by its deed of trust before payment of any sums to the lien holders.

APPEAL by defendants Ware and Bollinger from *Jackson, J.,* 26 June 1967 Civil Session of GASTON.

Petition under G.S. 45-21.32 for order determining disposition of surplus funds arising from a foreclosure sale.

The facts pertinent to a decision in this case may be summarized as follows:

Joe R. Wysor and wife entered into a written agreement with B. B. Banner, Jr., on 21 February 1964 by the terms of which Banner agreed to construct a house on the hereinafter described property for the agreed sum of $18,500.00.

By deed recorded 2 April 1964, at 11:53 A.M., in the Gaston County Registry, petitioner conveyed to Joe R. Wysor and wife the following described lot:

> Being the full contents of Lot No. 10 in Block A of the Southwood Subdivision as shown on map or plat of same recorded in Plat Book 14 at page 107.

Wysor and wife executed a deed of trust conveying the above described property as security for a note to First-Citizens Bank and Trust Company in the amount of $14,800.00, which note and deed of trust were dated 1 April 1964 and were recorded on 2 April 1964 in the Gaston County Public Registry at 11:54 A.M.

Petitioner claims a portion of the surplus funds by virtue of a note in the amount of $2,000.00, which is secured by a deed of trust on the above-described property executed in its favor by Wysor and wife, and recorded on 2 April 1964 at 11:55 A.M. in the Gaston County Registry.

Petitioner alleged that no material or labor had been furnished or performed upon the above-described property at the time of the execution of the deed of trust and note in its favor.

The parties, other than petitioner and the contractor, had claims

by virtue of labor or materials furnished, including the following who had filed claims of lien, to-wit: (1) Hawthorne Sales Company by virtue of a claim of lien filed 17 February 1965 in the amount of $198.96; (2) Sam Ware by virtue of a lien filed 8 May 1965, in the amount of $537.00; (3) Quentin Bollinger, trading as Bollinger Electric Company, by claim of lien filed on 2 June 1965 in the amount of $550.00.

Upon default in payment of note, the deed of trust executed to secure the note of First-Citizens Bank & Trust Company was foreclosed. At the foreclosure sale under said deed of trust, Joe R. Wysor and his wife became the last and highest bidders in the amount of $18,500.00, and thereafter the trustee in said deed of trust executed a trustee's deed to Joe R. Wysor and his wife for the property described in said deed of trust. (Prior to foreclosure, Carl J. Stewart was substituted as trustee in place of Henry M. Whitesides in the deed of trust recuring the note to First-Citizens Bank & Trust Company.)

After payment of the note secured by the deed of trust to First-Citizens Bank & Trust Company and the expenses of the sale, the substituted trustee paid to the Clerk of Superior Court a surplus in the amount of $2,380.65 under authority of G.S. 45-21.31.

Respondents Ware and Bollinger, who had furnished labor, materials and services in the construction of the house on the property herein described pursuant to contract with the general contractor, filed a motion to marshal assets. Respondents alleged in the motion that the surplus paid into court is insufficient to pay the balance due on petitioner's mortgage, including the costs and expenses of the proceeding, but is sufficient to pay the claims of respondents. The respondents further allege that Wysor and wife have not paid the purchase price of the land on which the house is built and that petitioner, by asserting a claim against the surplus funds held by the Clerk of Superior Court arising from the sale of said property, is prejudicing the rights of the respondent lien claimants, and that petitioner has a valid and subsisting first lien upon the property by virtue of its deed of trust, which is in default and subject to foreclosure by its terms.

Judge Jackson heard respondents' motion, found facts, and concluded as a matter of law that petitioner had only one source from which to collect its obligation, since the foreclosure of the deed of trust securing the note of First-Citizens Bank & Trust Company had the effect of extinguishing all junior encumbrances, particularly the deed of trust of petitioner, and transformed and transferred the lien of petitioner's deed of trust to the proceeds or surplus of the sale, if any were left after satisfying the lien of the senior deed of

trust. Further, that the doctrine of marshaling of assets did not apply to these facts. Upon these conclusions of law he thereupon entered an order denying the motion to marshal the assets.

Respondents Ware and Bollinger appealed.

*Horace M. Dubose, III, for defendant appellants Ware and Bollinger.*

*Joseph B. Roberts, III, for B. B. Banner, Jr.*

*Garland, Alala, Bradley and Gray for Nolen Concrete Co. and Witten Supply Company.*

*No Counsel contra.*

BRANCH, J. The question presented for decision by this appeal is whether the trial court erred in entering order denying motion of respondents Bollinger and Ware to marshal assets.

Appellants contend that the foreclosure of the senior deed of trust did not extinguish the lien of the junior deed of trust.

It is recognized in this jurisdiction that both equity and law permit the grantor in a deed of trust to purchase his own property at foreclosure sale. *In re Sale of Land of Sharpe,* 230 N.C. 412, 53 S.E. 2d 302; *Wilson v. Vreeland,* 176 N.C. 504, 97 S.E. 427.

Ordinarily, all encumbrances and liens which the mortgagor or trustor imposed on the property subsequent to the execution and recording of the senior mortgage or deed of trust will be extinguished by sale under foreclosure of the senior instrument. *Trust Co. v. Foster,* 211 N.C. 331, 190 S.E. 522.

In event there is any surplus after satisfaction of the debt of the senior lien, the trustee should pay it to the owner of equity of redemption or to the discharge of the junior liens, as the facts require. If adverse claims are asserted or there is doubt as to who is entitled thereto, the trustee may be discharged of liability by paying any surplus in his hands to the clerk of superior court pursuant to G.S. 45-21.31(b). *Military Academy v. Dockery,* 244 N.C. 427, 94 S.E. 2d 352; *Bobbitt v. Stanton,* 120 N.C. 253, 26 S.E. 817.

Accepting these principles of law, we must, however, consider the effect upon the junior liens when the trustor purchases his own property from the trustee upon the foreclosure under power of sale in the senior deed of trust.

The authorities in this State are understandably meager since the question presented in this case grows out of the very unusual situation of a trustor who is in default on his obligation appearing at the trustee's sale with a sufficient sum to pay the full debt secured by the senior lien plus the accrued costs of the sale.

There is a sharp divergence of opinion on this question in the several jurisdictions.

In 59 C.J.S., Mortgages, § 577, p. 973, it is stated:

> "The mortgagor or grantor of a deed of trust may always purchase at a sale of his own property by the mortgagee or trustee, but he cannot by such purchase defeat the right of recovery under subsequent encumbrances, . . ."

One line of authorities is represented by the case of *Huzzey v. Heffernan*, 143 Mass. 232, 9 N.E. 570, where a second mortgagee claimed that when property was reconveyed to the mortgagor by a third person who purchased it upon foreclosure sale under power of the first mortgage, the second mortgage revived and attached to the property on the ground that mortgagor was estopped by his warranty to deny the second mortgagee's title. The Court held that the foreclosure sale terminated the second mortgagee's interest, noting that the covenant in the second mortgage "is that the grantor will warrant and defend the premises against the lawful claims and demands of all persons except those claiming under the prior mortgage," which is not a general warranty. By asserting title acquired under foreclosure of the first mortgage, the mortgagor does not allege anything inconsistent with his assertions in his deed. The mortgagor asserts in his deed that the prior mortgage is a paramount title. To give the doctrine of estoppel the operation which the second mortgagee claims would be to enlarge the mortgagor's covenant to a general covenant of warranty.

*Plum v. Studebaker*, 89 Mo. 162, 1 S.W. 217, is in accord with the view of *Huzzey v. Heffernan, supra.* Here, H. C. Bettes and wife, Amanda, gave a deed of trust in 1879 to secure a debt due from W. H. Bettes & Co. to Mary Atherton. The firm was composed of W. H. and J. J. Bettes and they and their wives also joined in the deed which conveyed the land owned by Amanda and other property not owned by her. In 1881, the same grantors made another deed of trust on the same property to secure a debt of H. C. Bettes & Sons to defendants, Studebaker Bros. The latter deed of trust was made subject to the prior one. Thereafter W. H. Atherton, who represented the Mary Atherton debt, purchased the property at a trustee's sale under the first deed of trust and subsequently conveyed it by warranty deed to Amanda, who conveyed to plaintiff. The Court, in holding that plaintiff took title free from any lien of the second deed of trust, stated:

> ". . . under our system of deeds of trust, the trustee's sale operated as a complete foreclosure, and cut off the second

deed of trust as completely as if there had been a decree of foreclosure with all the parties before the court. Atherton got a perfect title as against the defendants, and it was entirely competent for Amanda Bettes to acquire that title, for she owed no duty inconsistent therewith."

A divergent view is stated in the case of *Jensen v. Duke,* 71 Cal. App. 210, 234 P. 876, where one Jensen executed a deed of trust to Abbott and then sold the property conveyed in the deed of trust, and subject thereto, to Duke. Duke executed a mortgage to Jensen. The first deed of trust was foreclosed and the purchaser at the foreclosure sale conveyed the property back to Duke. The case was brought to court by an action to foreclose the Jensen mortgage. Section 2930 of California Civil Code provides:

"Title acquired by the mortgagor subsequent to the execution of the mortgage, inures to the mortgagee as security for the debt in like manner as if acquired before the execution."

Holding that the Jensen deed of trust was revived by inurement and that the ruling in *Plum v. Studebaker, supra,* was not the correct law in the State of California, the Court said:

". . . the reason of the rule which absolutely extinsuishes junior mortgage lien following foreclosure of senior lien, the purchaser at foreclosure sale and his successors in interest being other than the mortgagor, would seem not to apply as to the mortgagor acquiring the title from foreclosure of the first mortgage, whether he acquired title directly under foreclosure deed or indirectly and as the grantee of a third party foreclosure-purchaser."

In accord with the view expressed by *Jensen v. Duke, supra,* is the case of *Martin v. Raleigh State Bank,* 146 Miss. 1, 111 So. 448. There Martin executed a deed of trust to the Bank which, in the body of the instrument, stated it was a second deed of trust, and further expressly stated that the second deed of trust was subject to the first deed of trust. The first deed of trust was foreclosed and title later was revested in Martin. The second deed of trust was then foreclosed and the beneficiary in the deed of trust bought in at the sale and brought this action for possession. The Court held, upon the ground of estoppel, that the trustor's title, acquired from a third person who purchased at the foreclosure of the first mortgage, was subject to the second mortgage.

*Jones v. Kingsley,* 55 N.C. 463, is the only North Carolina case which we find directly on the question under consideration. In that

case defendant, being indebted to plaintiff in the sum of $1136.00, executed a mortgage-deed to plaintiff to secure payment thereof. Upon default in payment, this bill was filed for foreclosure of the equity of redemption or, in the alternative, for a sale of the mortgaged premises. Defendant alleged that shortly after execution of the mortgage-deed he discovered that there was a judgment and execution outstanding wherein defendant was surety for another person, forming a prior lien to the mortgage-deed, of which he was not aware at the time of executing the deed. Plaintiff was advised of the situation, and he promised to advance the necessary funds to remove the prior encumbrance and to look to the mortgage-deed as security for this further sum. Plaintiff failed to perform this promise and permitted the property to be sold under execution. One Francis became the purchaser of the premises and thereafter conveyed to defendant. The surplus of $400, after satisfaction of the execution, was paid to plaintiff on his debt. The headnote in this case accurately states the holding of the Court as follows: "Where the mortgaged premises were sold under a prior lien, and bought by a third person, who sold again to the mortgagor, the rights of the mortgagee are not impaired by this transaction; so far from it, it will be regarded only as the removal of an incumbrance, which it was the duty of the mortagor to effect."

The result in *Jones v. Kingsley, supra,* is recognized and approved by many textwriters. It is stated in 2 Wiltsie on Mortgage Foreclosure § 835 (5th ed. 1939):

> "Where the owner of mortgaged premises, who has given a junior mortgage thereon, purchases the property upon a sale under a senior mortgage, the rule is that his purchase will not defeat the junior mortgage but will operate for the benefit of it in the same way as a discharge or transfer of the mortgage to himself would have done."

See also 3 Jones on Mortgages § 1887 (8th ed. 1928).

In those jurisdictions which hold that the junior lien is not extinguished when the trustor purchases at foreclosure sale under a senior deed of trust, the great majority of the decisions are based on the principle of estoppel created by the covenants of warranty and title in the junior encumbrance.

In North Carolina, whether a quitclaim deed or a deed of bargain and sale without technical covenants creates an estoppel depends upon its language, *Harrell v. Powell,* 251 N.C. 636, 112 S.E. 2d 81; and there is substantial authority in this jurisdiction for the position that the principle of estoppel will apply when the deed shows that the grantor intended to convey and the grantee expected

to acquire a particular estate, although the deed contains no technical covenants. *Keel v. Bailey,* 224 N.C. 447, 31 S.E. 2d 362; *Capps v. Massey,* 199 N.C. 196, 154 S.E. 52; *Willis v. Willis,* 203 N.C. 517, 166 S.E. 398; *Weeks v. Wilkins,* 139 N.C. 215, 51 S.E. 909; *Crawley v. Stearns,* 194 N.C. 15, 138 S.E. 403; *Williams v. R. R.,* 200 N.C. 771, 158 S.E. 473; *Woody v. Cates,* 213 N.C. 792, 197 S.E. 561.

In the case of *Crawley v. Stearns, supra,* the facts show that on 26 September 1918 one Brown and wife executed a written instrument, evidently intended as a deed of trust but designated as a second mortgage, purporting to convey title to property to secure bonds held by one Capehart. Capehart, the bondholder, was named as the grantee in the premises of the instrument and in its habendum, where the trustee is ordinarily named. However, the instrument provided that upon default Capehart could call upon the trustee, Barwick, to foreclose.

In July 1924 Barwick, as trustee, exposed the property described in the instrument to sale at public auction and later executed a trustee's deed for the property described in the instrument to R. W. Winston, Jr., who had become the last and highest bidder at the foreclosure sale. Winston entered into possession and subsequently conveyed said property to one Johnson by warranty deed. Plaintiffs claimed title under Johnson through *mesne* deeds containing covenants of warranty. Plaintiffs contracted to sell the property to defendant, who refused to accept plaintiffs' deed on the ground that the original deed of trust which Barwick, Trustee, purported to foreclose vested in Capehart the legal title, and that the legal title was not divested by the trustee's deed to the purchaser at the foreclosure sale. On 27 April 1927, Capehart and wife executed to Barwick, trustee, a deed "conveying all their right, title and interest" in and to the lot in question and reciting satisfaction of the secured debt and ratification of the trustee's sale. Holding that the trustee's deed to the purchaser at the sale made under the deed of trust was a deed of bargain and sale and that the trustee was estopped to deny his after-acquired title, the Court said:

"At common law a covenant of warranty was necessary to preclude the grantor from asserting an after-acquired title; but there is authority for the position that if a deed shows that the grantor intended to convey and the grantee expected to acquire the particular estate the deed may found an estoppel, although it contains no technical covenants. (Citing authorities).

" '. . . The consensus of all the authorities is to the effect that where the deed bears upon its face evidence that the entire estate and title in the land was intended to be conveyed, and

that the grantee expected to become vested with such estate as the deed purports to convey, then, although the deed may not contain technical covenants of title, still the legal operation and effect of the deed is binding on the grantors and those claiming under them, and they will be estopped from denying that the grantee became seized of the estate the deed purports to vest in him.' "

" '. . . The true principle is that the estoppel works upon the estate which the deed purports to convey and binds an after-acquired title as between parties and privies.' "

"The conveyance executed by the trustee to the purchaser at the sale made under the deed of trust is a deed of bargain and sale which has been duly registered. The seizin is deemed to have passed because the maker is estopped, and the registration puts the deed on the footing of a feoffment."

See also *Woody v. Cates,* 213 N.C. 792, 197 S.E. 561.

In the instant case the conveying clause stated, in part, that "the parties of the first part have bargained, sold, given, granted and conveyed, and by these presents do bargain, sell, give, grant and convey to the said party of the second part and his heirs and assigns, that certain lot, tract, or parcel of land. . . ." It is clear that the grantor intended to convey and the grantee expected to acquire as security for his debt the land described in the junior deed of trust. When trustor purchased the legal title at the foreclosure sale of the senior mortgage and duly recorded the deed received from the trustee, the title so acquired "fed the estoppel" and by operation of law vested the title so acquired in Shives, the trustee in the junior deed of trust.

In reviewing the cases from other jurisdictions we concede that a strong argument may be placed against the rule holding that the purchase by the trustor at the mortgage sale inures to the benefit of the junior lien, on the ground that the junior lienholder generally knows of the prior lien and has opportunity to protect himself by bidding at the sale or by taking judgment on the debt when the property is repurchased by the trustor. However, the stronger reasoning is that to allow the trustor to purchase his own property at the trustee's sale under the senior lien is one that is open to and conducive to fraudulent dealings under circumstances which would make the detection and proof of fraud very difficult.

We hold that the purchase by trustor at the senior mortgage sale did not extinguish the lien of the junior deed of trust.

The respondents Sam Ware and Quentin Bollinger, t/a Bollinger

Electric Company, nevertheless, are not entitled to invoke the equitable remedy of marshaling the assets.

In the case of *Trust Co. v. Godwin,* 190 N.C. 512, 130 S.E. 323, it is stated:

> " '. . . As a general rule, before the doctrine of marshaling assets will be applied, there must be two funds or properties, at the time the equitable relief is sought, belonging to the common debtor of both creditors, on both of which funds one party has a claim or lien, and on one only of which the other party has a claim or lien.' "

In the instant case there is no separate fund or properties upon which one party has a claim of lien on both and the other has a claim of lien on only one. The surplus paid into the hands of the clerk of superior court must be used to discharge the junior liens in the same priority as if resort were made to the land. For the purpose of satisfying the junior liens, and thus for the purpose of this decision, the fund in the hands of the clerk of Superior Court and the land described in the deeds of trust are one and the same.

It is not denied that the lien of the petitioner is superior to the liens of respondents.

55 C.J.S., Marshaling Assets and Securities, § 4, p. 962, states:

> "The doctrine of marshaling applies only when it can be applied with justice to the paramount, or doubly secured, creditor, and without prejudicing or injuring him, or trenching on his rights. Such relief will not be given if it will hinder or impose hardships on the paramount creditor, or inconvenience him in the collection of his debt, or deprive him of his rights under his contract, by displacing or impairing a prior acquired lien or contract right; nor will it be given on any other terms than giving him complete satisfaction. The doctrine is never enforced where it will operate to suspend or put in peril the claim of the paramount creditor, or cause him risk of loss, or where the fund to be resorted to is *one which may involve such creditor in litigation,* especially if final satisfaction is somewhat uncertain, or where the effect of applying *the doctrine would be to compel him to proceed by an independent action, such as one for the foreclosure of a mortgage,* since that would place an additional burden on him. (*Greenwich Trust Co. v. Tyson,* 27 A. 2d 166, 129 Conn. 211). . . . the paramount creditor will not be compelled to collect his debt from the singly charged fund or property where such fund is of uncertain value, especially where long delay will necessarily ensue in converting it into money,

or where that fund consists of property in the possession of third persons who claim title thereto, while the doubly charged fund is money in court."

A pertinent statement is also found in 3 Jones on Mortgages § 2174 (8th ed. 1928), as follows:

"Application of doctrine of Marshaling Securities. — In a proceeding for the distribution of surplus moneys, there is no room for the application of the doctrine of marshaling securities, whereby a creditor who has a double fund to which he may resort for satisfaction of his debt, and another creditor has only one of these funds, the first creditor will be required primarily to resort to that fund for the satisfaction of his debt over which he has the exclusive control. That rule of course implies the right of the creditor with the double fund or security to appropriate both funds if necessary. Therefore, a second mortgagee, applying for surplus moneys arising from a sale on foreclosure of the first mortgage will not be compelled to release his lien in favor of subsequent mortgages, on proof merely that his debt is amply secured by other property on which his mortgage is a lien, no matter how strong or apparently conclusive the evidence may be that such other property is sufficient to pay his claim. The court can not release a lien without actual payment, merely because witnesses testify and the referee finds that the holder of the lien has other property of his debtor to which he can resort for the satisfaction of his debt."

To allow the relief respondents seek would be to force the holder of the superior lien to institute foreclosure proceedings, expose himself to the possibility of costly litigation, and thereby suspend his immediate right to proceed against the fund in the hands of the clerk of superior court. Moreover, estoppel by deed or mortgage binds only parties and privies. *Brittain v. Daniels,* 94 N.C. 781. Respondents are not parties or privies to the parties named in either of the deeds of trust executed by the trustor. Thus, they have no rights arising out of estoppel by reason of the execution of the deeds of trust and trustor's purchase at the foreclosure sale under the senior deed of trust.

Although the trial court erroneously concluded that as a matter of law the foreclosure of the senior deed of trust had the effect of extinguishing the liens of all junior encumbrances, the correct result was reached in denying respondents' motion to marshal the assets, and the judgment of the court below is

       Affirmed.