CLARENCE M. SMITH AND WIFE, PAULINE G. SMITH v. THE CLERK OF SUPERIOR COURT AND ALL CLAIMANTS KNOWN OR UNKNOWN, IF ANY

No. 6923SC146

(Filed 18 June 1969)

**1. Laborers' and Materialmen's Liens § 1—— nature of the lien**

G.S. 44-1 gives a contractor an inchoate lien upon a building and the lot on which it is situated for work done and material furnished by him in constructing, improving or repairing such building pursuant to a contract with the owner.

**2. Laborers' and Materialmen's Liens § 8—— effect of perfected lien**

When a contractor perfects a laborers' and materialmen's lien in compliance with the requirements of G.S. Ch. 44, Art. 8, the resulting judgment creates (1) a special lien on the building and the lot upon which it is situated, and (2) a general lien on the other real property of the owner in the county where the judgment is docketed.

**3. Laborers' and Materialmen's Liens § 8—— satisfaction of judgment establishing the lien —— sale of the property**

The specific property subject to a laborers' and materialmen's lien must be sold for the satisfaction of the judgment before resort may be had to the other property of the owner. G.S. 44-46.

**4. Laborers' and Materialmen's Liens § 8; Mortgages and Deeds of Trust § 33—— foreclosure of junior deed of trust —— materialmen's claims to surplus proceeds**

Where a house and lot subject to a deed of trust and two superior materialmen's liens were sold upon foreclosure of the deed of trust, the surplus proceeds from the foreclosure sale deposited with the clerk of superior court by the trustee do not retain the identity of the real estate but constitute general funds of the original owners, and the assignee of the two superior materialmen's liens has no claim against the funds deposited with the clerk until the house and lot are first sold for satisfaction of the judgment establishing the materialmen's liens.

APPEAL by plaintiffs from *Collier, J.,* 22 November 1968 Session, YADKIN County Superior Court.

Clarence M. Smith and wife, Pauline G. Smith, (plaintiffs) instituted this special proceeding on 24 May 1967 pursuant to G.S. 45-21.32 to procure the sum of $2,345.36 which had been deposited with the Clerk of the Yadkin County Superior Court. This sum represented the excess proceeds from a foreclosure sale of a deed of trust.

Charles G. Hutchens (Hutchens) intervened in the action and filed an answer on 23 June 1967 in which it was alleged that Air Control Products, Inc., *et al.,* (Air Control) had procured a judgment against the plaintiffs in the amount of $468.64; this judgment

had been assigned to Hutchens and should be paid out of the funds on deposit with the clerk; subsequent to the foreclosure sale, someone had removed the doors, electric fixtures, plumbing fixtures, cabinets and other items from the premises, thereby damaging the property in the sum of $5,000.00; and this sum of $5,000.00 should be declared a specific lien upon the funds on deposit with the clerk.

On 29 November 1968 the plaintiffs filed an answer to the Hutchens claim denying the lien of the Air Control judgment against these funds and again asserting their right to these funds.

The record in this case lacks much in the way of clarity, but the following appear to be the facts:

1. In 1965 the plaintiffs owned a parcel of real estate containing nine-tenths of an acre and located on Pilot View Road in Yadkin County.

2. In May 1965 the plaintiffs started the construction of a house on this property. Pursuant to a contract, Harris Wholesale Builders Supply of Winston-Salem, Inc., (Harris) began furnishing materials for this construction on 22 May 1965. However, the plaintiffs did not pay for these materials, and within the six months' statutory time period after the final furnishing of the materials, Harris filed a lien against the property. Harris started an action to foreclose this lien in June 1966, which was within six months from the date of filing the lien. On 12 December 1967, a consent judgment was entered in favor of Harris for the sum of $6,673.07, and in the judgment it was specifically stated that the lien against the property dated from 22 May 1965.

3. Beginning on 6 July 1965, Air Control furnished materials for the construction of the house, but the plaintiffs did not pay for these materials. Within the six months' statutory time period after the final furnishing of the materials, Air Control filed a lien against the property. Air Control thereafter instituted an action to foreclose this lien on 12 January 1966, which was within six months from the date of filing the lien. On 20 December 1966 a judgment was duly entered by consent in favor of Air Control in the amount of $468.64, and this judgment specifically stated that it constituted a lien against the property relating back to 6 July 1965.

4. On 27 July 1965 the plaintiffs executed a deed of trust to Alvin A. Thomas, Trustee, (trustee) to secure an indebtedness of $7,500.00 to Economy Supply Co. (Economy). This deed of trust was recorded in Book 161, Page 48 of the Yadkin County Public Registry and was filed for recordation on 29 July 1965.

5.   The plaintiffs defaulted in the payments due on the indebtedness secured by the deed of trust *supra*. The trustee thereupon advertised the property for sale "subject to all prior unpaid taxes, liens and encumbrances of record."

6.   Pursuant to the trustee's notice of sale, the property was sold on 23 March 1967 to J. W. Steelman, *et al.*, who were the last and highest bidders with a bid of $10,000.00. The trustee executed a deed under date of 10 April 1967 to the purchasers. It was recorded on 10 April 1967 in Book 100, Page 646 of the Yadkin County Public Registry.

7.   J. W. Steelman, *et al.*, conveyed the property by deed under date of 12 April 1967 to Hutchens. This deed was subject to an outstanding deed of trust securing an indebtedness of $10,000.00 to the Bank of Yadkin, which Hutchens assumed. This deed was recorded on 17 May 1967 in Book 100, Page 799 of the Yadkin County Public Registry.

8.   The trustee filed his final report on 4 May 1967 showing the receipt of $10,000.00 from J. W. Steelman, *et al.* The report showed the expenses of the sale, including a payment of $7,100.28 to R. L. Brownlow, trading as Economy. This payment represented the balance due on the indebtedness secured by the deed of trust which had been foreclosed and which had been recorded in Book 161, Page 48 of the Yadkin County Public Registry. The report further showed that a surplus in the amount of $2,345.36 had been paid to the clerk of superior court to be "disbursed to those persons who may establish an interest in the same".

9.   By recorded assignments Hutchens acquired and now owns both the Air Control judgment and the Harris judgment.

The hearing before Judge Collier was conducted without a jury and in a most informal manner. The informality is accounted for probably by the fact that the plaintiffs were not represented by counsel. At any rate, no evidence was formally introduced, and the court records, consisting of lien dockets and judgment dockets, were referred to without being formally introduced in evidence. The following excerpt from the record will suffice to illustrate:

> "JUDGE:   I can't see what practical difference it makes. If I should declare the money belongs to these lienholders or to you. I can't see what the point of this is. Suppose I do declare it is your money, they will get the money anyway.
>
> SMITH:   According to the lien laws, they will have to levy upon the property and not on me.

Judge: That doesn't have anything to do with it. This is a personal judgment against you. If I declare the money in the Clerk's hands is yours, they still get the money. I can't see what difference it makes. They are going to get it anyway.

Smith: According to what I get from the law, they can't do it.

Judge: Either you or I don't understand the law. The judgments are against you. They are not restricted to levying against that property. They can levy against any assets you and your wife have. May be you can get the Supreme Court to say otherwise, but I'm not sure that it's right. That is the way I understand it.

Smith: I give notice of appeal."

Judge Collier entered a judgment under date of 22 November 1968 in which he made findings of fact in conformity with what has been set out above. He then stated:

"That Clarence M. Smith appeared in Court on behalf of himself and his wife, Pauline G. Smith, and admitted in open Court that the lien and judgment in favor of Air Control Products, Inc., recorded in Judgment Docket No. 9, page 294, was an outstanding lien and judgment and admitted that the lien and judgment in favor of Harris Wholesale Builders Supply of Winston-Salem, Inc., recorded in Judgment Docket No. 9, page 452, was an outstanding lien and judgment.

It further appearing to the Court that even if Clarence M. Smith and wife, Pauline G. Smith, were entitled to the surplus proceeds in the amount of $2,345.36 now being held in the Office of the Clerk of the Superior Court of Yadkin County, that the recorded judgments against Clarence M. Smith and wife, Pauline G. Smith, hereinabove referred to, would be entitled to be satisfied out of said surplus proceeds in the Office of the Clerk of the Superior Court of Yadkin County before any payment from said proceeds could be made to Clarence M. Smith and wife, Pauline G. Smith, and that equity and justice would require the satisfaction of said judgment liens before any other disposition could be made of said funds. The Court further finds as a fact that the holders of said judgments or their assignees are entitled to be paid in the following order: That the judgment entitled Air Control Products, Inc. vs. Clarence M. Smith, Jr., and wife, Pauline G. Smith, et al., in the amount of $468.64 plus interest from August 31, 1965, and the costs should be paid first, and that

the remainder of said proceeds in the Office of the Clerk of the Superior Court of Yadkin County should be applied as a payment on the judgment entitled Harris Wholesale Builders Supply of Winston-Salem, Inc. vs. Clarence M. Smith and wife, Pauline G. Smith; and that the payment should be made to the holder of said judgment or the assignee of the same.

That the Court is of the opinion and finds as a fact and as a conclusion of law that Charles G. Hutchens, claimant, should have and recover of Clarence M. Smith and wife, Pauline G. Smith, as a claim against the surplus held by the Clerk of the Superior Court of Yadkin County, North Carolina, the sum of $468.64 together with interest from August 31, 1965, and the cost in satisfaction of the judgment recorded in Judgment Docket No. 9, at page 294, Office of the Clerk of the Superior Court, Yadkin County; and that the remainder of said surplus funds should be paid to the holder or the assignee of the judgment of Harris Wholesale Builders Supply of Winston-Salem, Inc. vs. Clarence M. Smith and wife, Pauline G. Smith, to be applied on the amount due under said judgment; and that the Clerk of the Superior Court of Yadkin County should be authorized, empowered and directed to disburse said funds in accordance with this judgment.

Now, THEREFORE, IT IS ORDERED AND ADJUDGED that Charles G. Hutchens, claimant, have and recover of Clarence M. Smith and wife, Pauline G. Smith, as a claim against the surplus held by the Clerk of the Superior Court of Yadkin, the sum of $468.64 together with interest from August 31, 1965, and the cost in satisfaction of the judgment recorded in Judgment Docket No. 9, at page 294, Office of the Clerk of the Superior Court, Yadkin County; and that Lon H. West, Clerk of the Superior Court, is authorized, empowered and directed to disburse funds from the surplus funds in satisfaction of the judgment recorded in Judgment Docket No. 9, at page 294, as herein provided; and that the remainder of said surplus funds shall be disbursed by the Clerk of the Superior Court of Yadkin County to the holder or the assignee of the judgment of Harris Wholesale Builders Supply of Winston-Salem, Inc. vs. Clarence M. Smith and wife, Pauline G. Smith, and that Lon H. West, Clerk of the Superior Court of Yadkin County is hereby authorized, empowered and directed to disburse the remainder of said surplus funds to be

applied on the payment of the amount due on the judgment recorded in Judgment Docket No. 9, at page 452.

This the 22 day of November, 1968.

/s/ Robert A. Collier, Jr.
Judge Presiding."

From the entry of this judgment, including the findings of fact and conclusions of law, the plaintiffs excepted and appealed to this Court.

*Clarence M. Smith in Propria Personia for plaintiff appellants.*

*F. D. B. Harding and Allen and Henderson by H. F. Henderson for Hutchens appellee.*

CAMPBELL, J.

The determinative facts in the instant case are not in dispute. The Harris judgment established a lien against the real estate and the improvements thereon as of 22 May 1965, the date the materials were first furnished. The Air Control judgment, likewise, established a lien against the real estate and the improvements thereon as of 6 July 1965, the date it first furnished materials. By virtue of the statutory provisions permitting such liens to date back to the time materials were first furnished for these improvements, both of the judgments predated the deed of trust, which established a lien as of 29 July 1965. Both the notice of the trustee's sale under the deed of trust and the trustee's deed conveying the property specifically provided that the sale and conveyance were made "subject to all prior unpaid taxes, liens and encumbrances of record". Therefore, the purchasers at the foreclosure sale, who were the predecessors in title of Hutchens and from whom Hutchens derived title to the premises, acquired the premises subject to the outstanding liens of Harris and Air Control.

In connection with the enforcement of a judgment procured by virtue of a materialmen's lien, G.S. 44-46 provides:

"Upon judgment rendered in favor of the claimant, an execution for the collection and enforcement thereof shall issue in the same manner as upon other judgments in actions arising on contract for the recovery of money only, except that the execution shall direct the officer to sell the right, title and interest which the owner had in the premises or the crops thereon, at the time of filing notice of the lien, before such execution shall extend to the general property of the defendant."

[1-3]    In *Surety Corp. v. Sharpe,* 236 N.C. 35, 72 S.E. 2d 109, Mr. Justice Ervin, speaking for the Supreme Court, stated:

> "G.S. 44-1 gives a contractor an inchoate lien upon a building and the lot on which it is situated for work done and materials furnished by him in constructing, improving, or repairing such building pursuant to a contract with the owner. *Assurance Society v. Basnight,* 234 N.C. 347, 67 S.E. 2d 390. When the contractor perfects such inchoate lien in compliance with the requirements of Article 8 of Chapter 44 of the General Statutes, the resulting judgment creates this twofold lien: (1) A special lien on the building and the lot upon which it is situated; and (2) a general lien on the other real property of the owner in the county where the judgment is docketed. Under the controlling statute, the property subject to the special lien, *i.e.,* the building and the lot on which it is situated, must be sold for the satisfaction of the judgment before resort can be had to the other property of the owner. G.S. 44-46; *Pipe & Foundry Co. v. Howland,* 111 N.C. 615, 16 S.E. 859; *McMillan v. Williams,* 109 N.C. 252, 13 S.E. 764."

[4]    In support of the judgment entered by Judge Collier, Hutchens contends that the surplus funds retained the identity of the real estate and that he is, therefore, entitled to satisfy his judgments out of the surplus funds rather than out of the real estate itself. In support of this position, he relies upon *Realty Co. v. Wysor,* 272 N.C. 172, 158 S.E. 2d 7, wherein it was stated:

> ". . . The surplus paid into the hands of the clerk of superior court must be used to discharge the *junior* liens in the same priority as if resort were made to the land. For the purpose of satisfying the *junior* liens, and thus for the purpose of this decision, the fund in the hands of the clerk of Superior Court and the land described in the deeds of trust are one and the same." (Emphasis added)

It is to be noted that *Realty Co.* involved "junior liens", while the instant case involves senior liens. The judgments which were assigned to and are now owned by Hutchens, constitute senior liens and not junior liens. Therefore, *Realty Co.* affords no support to Hutchens under the particular facts here presented.

In the instant case, the surplus funds, which arose from the foreclosure sale and which were deposited by the trustee with the clerk of superior court, did not constitute real estate. The surplus funds represented the general funds of the plaintiffs, the owners of the

premises and the grantors in the deed of trust which was foreclosed. This being so, Hutchens, as owner of the Harris judgment and the Air Control judgment, had no claim against the funds on deposit with the clerk until the real estate and the house thereon were first sold for the satisfaction of these judgments, and only after this was done could there be resort to the plaintiffs' other property, including the funds in question. The judgment of Judge Collier provided otherwise, and this was error.

Reversed.

BROCK and MORRIS, JJ., concur.