CHARLES F. DUNN v. ŒTTINGER BROS.

(Filed 30 May, 1908.)

1. **Mortgagor and Mortgagee—Power of Sale—Foreclosure—Title Conveyed.**

    The grantee of a mortgagor under the power of sale by foreclosure contained in the mortgage, in the absence of collusion or fraud, takes title pursuant to the execution of the power.

2. **Same—Trusts and Trustees—Termination of Trust Estate.**

    H. sold lands to D., who gave him a mortgage thereon to secure balance of the purchase price. Thereafter he mortgaged the same land to O., who subsequently brought suit to foreclose. In the meanwhile H. foreclosed under the power of sale contained in his mortgage and made deed to B., and after the satisfaction of his debt, paid the balance to O. without objection from D., whereupon judgment was rendered against D. for the amount yet due O. after deducting this credit. Thereafter O., by agreement between himself and B., bought an interest in the land from B. In

the absence of any fraud or collusion between B., the purchaser at the mortgage sale, and O., the holder of the second mortgage: *Held*, (1) all the right, title and interest of the mortgagor and the second mortgagee in the land was extinguished by the sale under the first mortgage; (2) the general principle of law forbidding the mortgagee to acquire title in the trust estate against the mortgagor during the continuance of the trust has no application.

3. **Same—Laches, Evidence of.**

When a mortgagor seeks to set aside a sale made in pursuance of a power given under a mortgage, upon the ground that the mortgagee bought in the trust estate during the continuance of the trust, and the record shows that he had had opportunities to set up the equity thus claimed in various other suits, it is at least suggestive of laches and inconsistent with his present action, though possibly not an estoppel of record.

ACTION heard before *Biggs, J.,* and a jury, at November Term, 1907, of LENOIR.

The facts disclosed by the pleadings and evidence are: Plaintiff, C. F. Dunn, was the owner of a house and lot in the town of Kinston, known as the "R. C. Hay lot" and also as the "Hotel Charles." He purchased the land on which said hotel was located from one R. C. Hay, and, to secure the purchase money, executed, 22 August, 1898, to said R. C. Hay a mortgage on said property, with power of sale. Subsequent to said time, to-wit, on 11 July, 1900, the plaintiff executed a mortgage to the defendants on what was known as the "Matilda H. Brown" lot, to secure the payment of a note for $500, and also all notes, accounts or evidence of indebtedness whatsoever which he was then owing to said Œttinger Bros. or which he might at any time thereafter create with them or contract for, whether for advances of money, merchandise or any other thing of value, whether furnished him personally or to any other persons by his order, and on such promise and conditions as might be mutually agreed upon, not exceeding the amount of $1,000 and such interest as might be due. While said mortgage of 11 July was still due and unpaid, the plaintiff executed to the defendants a second mortgage on

the lot in controversy, the Hotel Charles lot, and several other lots, to secure the $500 note secured in the prior mortgage of 11 July, 1900; a $250 note, dated 22 August, 1900; a note for $750, dated 26 December, 1900, and also "any and all additional amounts which may be due or hereafter may become due by him to them, and which have been heretofore secured by the mortgage deed dated 11 July, 1900." He also therein stipulated and agreed to pay to them all other notes, accounts or any other indebtedness whatsoever which he might at present be owing to them or at any time thereafter create with them or contract for, whether for advances for money, merchandise or any other thing, whether furnished personally or to any other person by his order or request, and on such promise and conditions as may be mutually agreed upon, not to exceed altogether the amount of $2,000 and such interest as might be due.

On 17 April, 1902, the defendants, Œttinger Bros., brought an action in the Superior Court of Lenoir County against the plaintiff to foreclose said mortgages of 11 July, 1900, and 26 December, alleging that there were due on said mortgages one note for $500, with interest from 1 January, 1901; one note for $250, with interest from 1 January, 1901; one note for $750, with interest from 26 December, 1900, and a note for $500, with interest from 1 March, 1901.

At November Term, 1902, judgment was rendered "That the plaintiff recover of the defendants the sum of $1,222.11, with interest on $1,197.95 from 9 July, 1902, till paid, this being the amount now due since the payment to the plaintiffs of the surplus over and above the R. C. Hay mortgage debt, to-wit, $980.21, paid 9 July, 1902, the plaintiffs being the second mortgagees of the mortgage in the property covered by the Hay mortgage. It is further ordered that, in case said amount is not paid within thirty days, the lands conveyed in the two mortgages, except the Hay lot, be sold (the Hay lot having in the meantime been sold under the mortgage to R. C. Hay)."

On 24 June, 1902, R. C. Hay, under the power of sale contained in the mortgage from plaintiff to him, sold the R. C. Hay lot or Hotel Charles lot at public auction, at which sale A. F. Becton became the purchaser, at the price of $2,070, and R. C. Hay executed to him a deed therefor.

R. C. Hay, after retaining the amount due him on said mortgage, paid the surplus of $980.21 to the defendants, Œttinger Bros., as second mortgagees of said land. The commissioners made their report at March Term, 1903, in which they stated that they had sold only one tract of land conveyed in the mortgages, to-wit, the Matilda H. Brown lot, for $1,750, which, together with the amount of the surplus of the purchase price of the R. C. Hay lot, more than paid the amount of the judgment. The surplus, amounting to $402.38, was paid into the Clerk's office and, by order, entered at September Term, 1903, by consent, creditors' suits against plaintiff were consolidated with the suit of the plaintiff, and G. V. Cowper, trustee of plaintiff in bankruptcy, was made a party defendant and the surplus distributed among said creditors according to the priorities of their claims.

Proceedings in bankruptcy were instituted by plaintiff on 24 June, 1902, and he received his discharge therein on 11 January, 1904. G. V. Cowper was appointed trustee of plaintiff in bankruptcy, and was finally discharged 29 June, 1904.

On 29 January, 1903, A. F. Becton purchased the R. C. Hay lot or the Hotel Charles lot and conveyed a one-half interest therein to defendants, Œttinger Bros., in consideration of $1,000 and other valuable considerations to him paid by Œttinger Bros. The valuable considerations mentioned in the deed are testified to by D. Œttinger: "Becton told me that he would sell Œttinger Bros. one-half interest at cost and expense, for he wanted me to take charge of the property and rent it out and collect rents, since he was living in the country and could not attend to it without considerable expense."

After purchasing said land and taking a deed therefor, A. F. Becton brought an action against plaintiff to recover possession of said land, the summons in which action was dated 23 August, 1902. There was a judgment by default rendered in said proceeding at January (Special) Term, 1903, which judgment was set aside on appeal to the Supreme Court as being contrary to the course and practice of the courts. There was a judgment at November Term, 1905, adjudging that A. F. Becton was owner of the land in controversy.

After the purchase of the one-half interest in said land from A. F. Becton, the plaintiff rented said land from A. F. Becton and Œttinger Bros., and on 22 January, 1903, Œttinger Bros. and A. F. Becton brought a summary ejectment against plaintiff before a justice of the peace, in which proceeding plaintiff was ejected from said premises.

After the plaintiff had been ejected from said Hotel Charles or R. C. Hay lot, D. Œttinger swore out a warrant before a justice of the peace against him for trespassing on said lot, in which proceeding he was found guilty.

The plaintiff contends that, Hay having a mortgage on the land in controversy, and the defendants, Œttinger Bros., holding a second mortgage on the same land, executed on 26 December, 1900, to secure the indebtedness named in said mortgage and also the indebtedness secured in the mortgage of 11 July, 1900, the defendants did not have the right to buy the one-half interest in the land in controversy from A. F. Becton, freed from the trust in favor of the plaintiff; that the plaintiff having been discharged in bankruptcy and the estate closed and the trustee discharged more than two years before the bringing of this action, the trustee is barred of any right of action and the plaintiff is entitled to bring the action in his own name; that none of the various actions to which the plaintiff was a party, set up as estoppels on the part of the defendants, pass upon the question involved in this suit, nor could

the right of the plaintiff in this suit have been litigated in any of those actions, and that he is not estopped thereby.

The plaintiff tendered the following issue: "What was the value of the lot in controversy at the time the defendants purchased one-half interest therein from A. F. Becton?" His Honor declined to submit such issue, and plaintiff excepted.

The plaintiff proposed to prove that, at the time of the purchase of the one-half interest in the lot in controversy by defendants of A. F. Becton, the said lot was worth $5,000 or $5,500. Defendants objected, which objection was sustained, and plaintiff excepted.

The plaintiff requested his Honor to charge the jury as follows: "That if they believed the evidence they would find that the defendants held a half interest in the land in controversy in trust for the plaintiff, subject to the repayment of the purchase price therefor, less what they may have received from said half interest in said land." The court refused to give these instructions, and the plaintiff excepted and appealed.

*W. C. Munroe* for plaintiff.
*Rouse & Land* and *Loftin & Varser* for defendants.

CONNOR, J., after stating the facts: The general principle upon which the plaintiff's learned counsel rests his client's right to recover is universally recognized and enforced. That a trustee cannot, during the existence of the trust, buy in or by any other method, either directly or indirectly, acquire the title to the estate or property to which the trust attaches, and hold it against his *cestui que trust,* is a basic and cardinal principle in equity. It is equally well settled with us that the relation of mortgagor and mortgagee comes within the class or relation to which this principle applies. *Fronerberger v. Lewis,* 79 N. C., 426, in which *Judge Reade* says that the rule is so well established "that we would scarcely be excused for encumbering the case with authorities, except to

show how general is the rule and how few the exceptions." He cites and comments upon almost every case in our reports in which the rule was applied. *Taylor v. Heggie,* 83 N. C., 304, is directly in point, provided there was any trust relation existing between Œttinger and Dunn at the time Becton conveyed to the former. It is settled that a sale of property, pursuant to a power given in the mortgage, in the absence of fraud, is effectual to foreclose the equity of redemption of the mortgage. "A sale under a mortgage or deed of trust, if valid and free from fraud or unfairness, will extinguish the equity of redemption in the mortgaged premises, leaving him no title or interest of any kind." 27 Cyc., 1503. The sale also cuts out and extinguishes all liens, encumbrances and junior mortgages executed subsequent to the mortgage containing the power. *Ib.* This is clearly established by the decision in *Paschall v. Harris,* 74 N. C., 335. Plaintiff's intestate held a second mortgage on the *locus in quo.* The holder of the first mortgage executed his power of sale and sold the land, making title to the purchaser. Plaintiff filed a petition to sell the interest of his intestate in the land. *Pearson, C. J.,* said: "Plaintiff's intestate had an equity of redemption, but it was subject to a power of sale. * * * The right of the intestate was extinguished by the sale." This is the doctrine uniformly recognized and, we think, founded upon sound principle. It would seem, therefore, that when Hay sold the property under the power contained in the mortgage, and it was purchased by and conveyed to Becton, all right, title and interest of Dunn, as mortgagor, and Œttinger, as mortgagee, was extinguished. In respect to this property, no trust or other relation existed between Dunn and Œttinger. It is not necessary for us to discuss the question whether Œttinger could have purchased at the sale and acquired the title, discharged of the trust. Mr. Jones says that he could do so. 11 Jones Mortgages, sec. 1884. He is sustained by the English authority cited. *Taylor v. Heggie, supra,* is to the con-

trary, and we have no disposition to disturb the doctrine of that and other cases upon the question. Here, however, Becton was the absolute owner, holding title under a power created by Dunn in Hay. It is a rule of law that when one takes title pursuant to the execution of a power he is in under the grantor of the power (22 Am. and Eng. Enc., 1125); hence Becton was in as if Dunn had conveyed directly to him at the date of Hay's mortgage. Oettinger, who had brought suit to foreclose his mortgage on this and other lands prior to the sale, recognizing the effect of the sale by Hay under the power, took no decree in regard to the property, but accepted and credited his debt with the surplus of the purchase money paid by Becton, after discharging Dunn's indebtedness to Hay. Dunn, who is presumed to have notice of the proceedings in the action against him in respect to the property, makes no objection to the receipt of the surplus, and takes benefit of it by way of reducing his debt. We can see no reason why, after Becton took title and paid the money, Oettinger could not purchase from him and acquire a good title, free from any trust or obligation to Dunn. The learned counsel has cited to us a large number of cases, English and American, bearing upon the subject. In *Bennett v. Austin,* 81 N. Y., 322, it appeared that the junior mortgagee attempted to purchase for himself the land mortgaged, at a sale for foreclosure of the prior mortgage. It was well decided that he could not do so. There, at the time of the purchase, the mortgagor had an equity of redemption. It was foreclosed at the time and by means of the sale. The language of *Miller, J.,* is illustrative of the distinction between that case and this: "He could not be a trustee before the sale, and immediately afterwards a stranger to the trust. A trustee cannot thus get rid of his obligation, discharge the trust and reap the advantage of a sale for himself individually." This is strictly in line with the equitable doctrine, but it is to be noted that the defendant, by the very act of making the pur-

chase, sought to discard his trust obligation, whereas here the property had by the sale to Becton been removed from the trust. It was impossible for either Dunn or Œttinger, by any act of theirs, to bring it back into the trust. Œttinger is not seeking to "discharge the trust" by buying at the sale under the mortgage. That was done by the sale to Becton. So, in *Brantly v. Kee,* 58 N. C., 322, the defendant was a trustee for others at the time he purchased the slave from the trustee having a prior right. Thus Bispham (Eq., sec. 92) says: "Wherever one person is placed in such relation to another by the act or consent of the other or the act of a third person or of the law that he becomes interested with him in any subject of property or business, he is prohibited from acquiring rights in that subject antagonistic to him with whose interest he has become associated." The difficulty with plaintiff's case consists in the fact that, after the sale to Becton, the defendants occupied no relation to Dunn in respect to the property; they were not "interested with him" in the property. The interests of both had passed to Becton. It must be conceded that the decision in *Boyd v. Hawkins,* 37 N. C., 304, is very much in point. Boyd conveyed the property in trust to Fitts to pay certain debts to Richard Boyd and Thompson. Fitts conveyed the property to Hawkins upon the same trusts. A part of the land was situate in Granville County, and the deed was not recorded in that county. The Bank of New Bern procured judgment against Boyd and secured a levy upon and sale of the land in Granville to pay the judgment. Robards, the attorney for the bank, bought at the sale and took a deed from the Sheriff. He conveyed the land to Hawkins. The Court held that Hawkins held the land in trust for Boyd. The learned counsel strongly urges that there is no distinction between the cases. It must be conceded that the sale under the execution vested in Robards title paramount to that of the trustee, Hawkins. The learned Judge writing the opinion makes no mention of this fact, but treats

the parties as occupying the relation of trustee and *cestui que trust* with respect to the land. The decision is not in harmony with more modern cases and authority. If we could see the slightest evidence of any preconcerted arrangement or understanding between Becton and defendants looking to a joint purchase of the lot at the mortgage sale·by Hay, suppression of bidding or any other conduct calculated to prejudice the plaintiff's right, we should not hesitate to declare defendants trustees for plaintiff, unless by his conduct he is equitably estopped. The balance of the purchase money, after paying Hay's debt, was applied to plaintiff's indebtedness to defendants. He had several opportunities in his various lawsuits with Becton and defendants to set up the equity which he now seeks to use as a cause of action. He filed his petition in bankruptcy, making no suggestion that he had any such equity or interest in the land. The decrees in the suit of defendants to foreclose his mortgages were made, confirming the sale of the other property and crediting the plaintiff with the surplus proceeds of the sale of the Hay property, without any suggestion of the present claims. While possibly not an estoppel of record, certainly all of the acts and omissions of plaintiff are suggestive of laches on his part and are inconsistent with his present contention. After a careful consideration and examination of the authorities, we concur with his Honor's ruling refusing to submit the issue or give the instruction requested. There is

No Error.