IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA20-125

Filed: 17 November 2020

Polk County, No. 18-CVS-35

HOME REALTY CO. & INSURANCE AGENCY, INC., a North Carolina Corporation, Plaintiff,

v.

RED FOX COUNTRY CLUB OWNERS ASSOCIATION, INC., a North Carolina nonprofit corporation; *et al.*, Defendants.

Appeal by Defendants from order entered 2 December 2019 by Judge Robert C. Ervin in Polk County Superior Court. Heard in the Court of Appeals 11 August 2020.

> *Offit Kurman, P.A., by Robert B. McNeill, for Plaintiff-Appellee.*
>
> *Erwin, Bishop, Capitano & Moss, P.A., by Fenton T. Erwin, Jr., for Defendants-Appellants.*

COLLINS, Judge.

Red Fox Country Club Owners Association and homeowners in the Red Fox Community in Polk County (collectively "Defendants") appeal from an order entering judgment on the pleadings in favor of Home Realty Co. & Insurance Agency, Inc. ("Plaintiff"), the owner of property generally known as the Red Fox Country Club Golf Course ("the Property"). Defendants argue that the trial court erred by granting

judgment on the pleadings in favor of Plaintiff and by dismissing Defendants' counterclaims with prejudice. We affirm the order.

## I. Procedural History

Plaintiff filed a complaint on 8 February 2018 in Polk County Superior Court seeking to quiet title to the Property and requesting a declaratory judgment that restrictions recorded in 1986 had been extinguished by a foreclosure in 1990, and were no longer in force to encumber or restrict the Property. Plaintiff filed an amended complaint in April. Defendants filed an answer, defenses, and counterclaims in June. Plaintiff filed a motion to dismiss, answer, and affirmative defenses in August. Defendants filed an amended answer, defenses, and counterclaims in March 2019. Plaintiff filed a motion to dismiss, reply to counterclaims, and affirmative defenses in May.

In July 2019, Plaintiff filed a motion for judgment on the pleadings, followed by a memorandum of law supporting the motion, with exhibits. In September, Defendants filed a memorandum of law opposing the motion, with affidavits and exhibits. Plaintiff filed a reply brief in October. After conducting a hearing on the motion on 8 November 2019, the trial court entered an order on 2 December 2019 granting Plaintiff's motion for judgment on the pleadings and dismissing Defendants' counterclaims with prejudice. Defendants timely filed notice of appeal.

## II. Factual Background

In 1966, Charles Dooley and Robert Ernst conveyed 582.29 acres of property, which included 231.20 acres upon which Red Fox Country Club Golf Course was operating, to Tryon Development Company ("Tryon"). Ten days later, Tryon recorded restrictive covenants in the Polk County Register of Deeds,[1] governing a subdivision called Red Fox Run ("1966 Restrictions"). Tryon also recorded plats depicting sections A, B, C, D, E, and H of the subdivision. The 1966 Restrictions did not purport to apply to the remaining acreage that included the golf course.

After 37 lots had been sold, Tryon severed 231.20 acres—the Property that contained the golf course—from the original 582.29-acre tract and conveyed it, as well as another tract, to Red Fox Properties, Inc., by two deeds recorded on 14 July 1971.

Red Fox Properties, Inc., conveyed both tracts to Capstone Development Company ("Capstone") by two deeds recorded on 4 October 1983. The deed to the tract that did not include the golf course explicitly excluded the 70 lots that had been sold by that time.

Capstone executed and recorded on 27 June 1984 a deed of trust that encumbered the Property[2] in the amount of $2,600,000 to William Miller, as trustee

---

[1] All recordings referred to herein were filed in this office.

[2] While this deed of trust and the subsequent encumbrances and conveyances referred to herein also applied to the tract of property that did not contain the golf course, we refer hereinafter to the Property only, as the other tract is not relevant in this case.

for Adrian Hooper ("Hooper deed of trust"). In February 1986, Capstone transferred the Property to Red Fox, Ltd.

On 23 December 1986, Red Fox, Ltd., recorded Amended & Restated Restrictions for Red Fox Country Club and Provisions for Red Fox Country Club Owners Association ("1986 Restrictions"). The 1986 Restrictions pertained to the Property acquired from Capstone and the properties of 40 homeowners who ratified the 1986 Restrictions. The 1986 Restrictions created a Red Fox Country Club Owners Association ("the Association") and stated in part that the "Recreational Amenities shall be conveyed to the Association as Common Properties upon the sale of ninety (90%) percent of the Participating Membership in Red Fox Country Club but not later than January 1, 1996."

At 11:00 on 30 December 1986, Red Fox, Ltd., recorded a deed conveying the Property it had acquired from Capstone to Red Fox Limited Partnership. At 11:10 on 30 December 1986, Red Fox Limited Partnership recorded a deed of trust encumbering the Property as collateral for a note in the amount of $3,000,000 to North Carolina Federal Savings & Loan Association ("NCFS&L deed of trust"). At 11:15 on 30 December 1986, the trustee for the 27 June 1984 Hooper deed of trust recorded a subordination agreement, wherein the trustee subordinated the lien created by the Hooper deed of trust to the lien created by the NCFS&L deed of trust.

On 20 February 1990, the substitute trustee for the Hooper deed of trust commenced foreclosure proceedings and served notice on Red Fox Limited Partnership, Capstone, and the District Director for the Internal Revenue Service. Adrian Hooper purchased the Property at the foreclosure sale and assigned the bid to RF Acquisition Co., Inc. ("RF Acquisition"), an entity of which he was President. On 19 June 1990, the substitute trustee conveyed the Property via trustee's deed to RF Acquisition. The substitute trustee filed a Final Report and Account of the sale, which the clerk of superior court audited and approved.

On 2 March 1992, the substitute trustee for the NCFS&L deed of trust commenced foreclosure proceedings. After conducting the sale of the Property, the substitute trustee filed a Final Report of Sale, which the clerk of superior court audited and approved. The substitute trustee conveyed the Property on 14 May 1992 to Resolution Trust Corporation, Receiver for NCFS&L. The deed was recorded on 15 June 1992. The substitute trustee filed a Final Report of Sale, which the clerk of superior court audited and approved. Resolution Trust Corporation conveyed the Property to Plaintiff by a deed recorded on 5 August 1992.

### III. Discussion

Defendants argue that the trial court erred by: (1) failing to treat Plaintiff's motion for judgment on the pleadings as one for summary judgment because the trial court considered matters outside the pleadings; (2) entering judgment on the

pleadings in favor of Plaintiff, because the foreclosure by power of sale on the Hooper deed of trust was not properly conducted; (3) holding as a matter of law that the 1986 Restrictions were extinguished as to the 40 property owners who had ratified them; and (4) dismissing with prejudice Defendants' counterclaims.

## A. Matters Outside the Pleadings

Defendants argue that the trial court erred by failing to treat Plaintiff's motion for judgment on the pleadings as a motion for summary judgment. Defendants contend that when the trial court considered the arguments of counsel, it necessarily considered affidavits and exhibits attached to the parties' respective memoranda of law and brief, which constituted matters outside the pleadings.

Rule 12(c) of the North Carolina Rules of Civil Procedure provides:

> After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to *and not excluded by* the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

N.C. Gen. Stat. § 1A-1, Rule 12(c) (2019) (emphasis added).

This provision sets forth a procedure analogous to the conversion of a motion to dismiss under Rule 12(b)(6) to a motion for summary judgment. *See* 5C Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1371 (3d ed. 2020) (citing

Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.")).

With respect to both motions to dismiss and motions for judgment on the pleadings, the trial court is vested with discretion to choose whether to consider materials outside the pleadings submitted in support of or in opposition to those motions. *See id.* §§ 1366, 1371. *See also McBurney v. Cuccinelli*, 616 F.3d 393, 410 (4th Cir. 2010) ("[A] judge need not convert a motion to dismiss into a motion for summary judgment as long as he or she does not consider matters outside the pleadings. . . . [N]ot considering such matters is the functional equivalent of excluding them—there is no more formal step required." (internal quotation marks and citation omitted)).

Documents attached to and incorporated within a complaint become part of the complaint. *Weaver v. Saint Joseph of the Pines, Inc.*, 187 N.C. App. 198, 204, 652 S.E.2d 701, 707 (2007). "They may, therefore, be considered in connection with a Rule 12(b)(6) or 12(c) motion without converting it into a motion for summary judgment." *Id.* (citation omitted). "[I]n the event that the matters outside the pleadings considered by the trial court consist only of briefs and arguments of counsel, the trial court need not convert the motion into one for summary judgment." *Steele v. Bowden*,

238 N.C. App. 566, 573, 768 S.E.2d 47, 54 (2014) (internal quotation marks, brackets, and citation omitted).

In determining whether a trial court considered matters outside the pleadings when entering judgment on the pleadings, reviewing courts have looked to cues in the trial court's order. *See Davis v. Durham Mental Health*, 165 N.C. App. 100, 105, 598 S.E.2d 237, 241 (2004) (motion for judgment on the pleadings was not converted into motion for summary judgment, even though plaintiff presented at least three documents to the trial court, where the order stated, "[b]ased upon the pleadings and the arguments of counsel, the Court finds that Defendant is entitled to entry of a judgment in its favor based on the pleadings"); *Privette v. Univ. of N.C. at Chapel Hill*, 96 N.C. App. 124, 132, 385 S.E.2d 185, 189 (1989) (Rule 12 motion was not converted into a Rule 56 motion where affidavits were introduced to support the motion, because "the trial court specifically stated in its order that for the purposes of the Rule 12 motion, it considered only the amended complaint, memoranda submitted on behalf of the parties[,] and arguments of counsel").

In this case, the trial court stated in its order granting Plaintiff's motion for judgment on the pleadings:

> The Court considered the pleadings, the arguments of counsel, and applicable law, and determined that Plaintiff's Motion for Judgment on the Pleadings should be granted.

As in *Davis* and *Privette*, the order indicates that the trial court considered the pleadings, the arguments of counsel, and applicable law. Notably, it does not state that the trial court considered Defendants' affidavits or exhibits that would appropriately have been considered on a motion for summary judgment. Additionally, nothing in the record indicates that the trial court considered matters beyond the pleadings, the arguments of counsel, and the applicable law. Accordingly, although the affidavits and exhibits were *presented* to the trial court, they were *excluded* by the trial court, and the motion was therefore not converted into one for summary judgment. *See McBurney*, 616 F.3d at 410.

## B. Judgment on the Pleadings

Defendants argue that the trial court erred by entering judgment on the pleadings in favor of Plaintiff because the trial court failed to consider genuine issues of fact in dispute, and Plaintiff is not entitled to judgment as a matter of law. Defendants specifically assert that the foreclosure proceedings on the Hooper deed of trust were defective as a matter of law.

This Court reviews a trial court's order granting a motion for judgment on the pleadings de novo. *Toomer v. Branch Banking & Tr. Co.*, 171 N.C. App. 58, 66, 614 S.E.2d 328, 335 (2005). Under a de novo review, we "may freely substitute our judgment for that of the trial court." *Carteret County v. Kendall*, 231 N.C. App. 534,

536, 752 S.E.2d 764, 765 (2014) (internal quotation marks, brackets, and citation omitted).

"A motion for judgment on the pleadings is the proper procedure when all the material allegations of fact are admitted in the pleadings and only questions of law remain." *Ragsdale v. Kennedy*, 286 N.C. 130, 137, 209 S.E.2d 494, 499 (1974) (citations omitted). The movant must show that no material issues of fact exist and that the movant is entitled to judgment as a matter of law. *Id.*

> The trial court is required to view the facts and permissible inferences in the light most favorable to the nonmoving party. All well pleaded factual allegations in the nonmoving party's pleadings are taken as true and all contravening assertions in the movant's pleadings are taken as false. All allegations in the nonmovant's pleadings, except conclusions of law, legally impossible facts, and matters not admissible in evidence at the trial, are deemed admitted by the movant for purposes of the motion.

*Id*. (citations omitted).

"[I]nstruments registered in the office of the register of deeds shall have priority based on the order of registration . . . ." N.C. Gen. Stat. § 47-20 (2019). Generally, "[t]itle acquired by foreclosure relates back to the date of the mortgage, so as to cut off intervening equities and rights." *St. Louis Union Tr. Co. v. Foster*, 211 N.C. 331, 344, 190 S.E. 522, 530 (1937) (quoting 3 *Jones on Mortgages* 623 (8th ed.)). "Ordinarily, all encumbrances and liens which the mortgagor or trustor imposed on the property subsequent to the execution and recording of the senior mortgage or deed

of trust will be extinguished by sale under foreclosure of the senior instrument." *Dixieland Realty Co. v. Wysor*, 272 N.C. 172, 175, 158 S.E.2d 7, 10 (1967) (citation omitted). *See also Dunn v. Oettinger Bros.*, 148 N.C. 276, 282, 61 S.E. 679, 681 (1908) ("A sale under a mortgage or deed of trust . . . cuts out and extinguishes all liens, encumbrances[,] and junior mortgages executed subsequent to the mortgage containing the power." (internal quotation marks and citation omitted)).

In this case, the Hooper deed of trust that encumbered the Property in the amount of $2,600,000 was recorded on 27 June 1984. In February 1986, Capstone transferred the Property to Red Fox, Ltd. On 23 December 1986, Red Fox, Ltd., recorded the 1986 Restrictions. Accordingly, title acquired by RF Acquisition to the Property upon the foreclosure on the Hooper deed of trust related back to 27 June 1984 and extinguished the 1986 Restrictions.

Defendants seem to argue in their reply brief that, because Plaintiff purchased the Property at a second foreclosure sale on the NCFS&L deed of trust, which was recorded after the 1986 Restrictions, that this sequence of events should cause us to disregard the extinguishment of the 1986 Restrictions by the prior Hooper foreclosure. Defendants cite no authority to support this argument, and our own research reveals no authority supporting a theory that, after the 1986 Restrictions were extinguished as to the Property by the Hooper foreclosure, the benefits and burdens created by the 1986 Restrictions were resurrected with respect to the

Property and reattached to the Property when it was later conveyed at the foreclosure sale on the NCFS&L deed of trust.

While the record shows the trustee for the 27 June 1984 Hooper deed of trust recorded a subordination agreement at 11:15 on 30 December 1986, which subordinated the Hooper deed of trust lien to the lien created by the NCFS&L deed of trust, that instrument did not waive the priority of the 27 June 1984 Hooper deed of trust over the Amended & Restated Restrictions subsequently recorded by Red Fox, Ltd., on 23 December 1986. N.C. Gen. Stat. § 47-20 ("Instruments registered in the office of the register of deeds shall have priority based on the order of registration . . . .").

*1. Notice*

Defendants argue that the foreclosure proceedings on the Hooper deed of trust did not extinguish the 1986 Restrictions because the proceedings were defective as a matter of law. Defendants specifically argue that the proceedings were void as to them because they were not given notice of the proceedings pursuant to N.C. Gen. Stat. § 45-21.16(b).

At the time of the foreclosure proceedings instituted on 20 February 1990, the relevant portion of N.C. Gen. Stat. § 45-21.16(b) required notice of the hearing be given to

> [e]very record owner of the real estate whose interest is of
> record in the county where the real property is located at

the time of giving notice. The term "record owner" means any person owning a present or future interest of record in the real property which interest would be affected by the foreclosure proceeding . . . .

N.C. Gen. Stat. § 45-21.16(b)(3) (1991).

Defendants contend that they were record owners entitled to notice because they had a future interest in the Property by virtue of the terms of the 1986 Restrictions. Specifically, Defendants assert that by the terms of the 1986 Restrictions, (a) the Association, of which each property owner was a member, was created; and (b) Red Fox, Ltd., as the owner of the Property, committed to convey "Recreational Amenities . . . to the Association as Common Properties upon the sale of ninety (90%) percent of the Participating Membership in Red Fox Country Club but not later than January 1, 1996." This commitment to convey the Property, Defendants argue, created a future interest in real property in the Association and its members. Defendants contend that it was Plaintiff's burden to "prove that the foreclosure sale met the requirements of law then in effect in order to apply any principles of law that arise out of the foreclosure," and that "[i]t was not necessary for Defendants to plead in their Answer the 'lack of notice.'"

While Plaintiff argues in response that Defendants were not record owners entitled to notice under the statute, Plaintiff contends that Defendants are barred from relying on this unpled affirmative defense to defeat Plaintiff's motion for judgment on the pleadings. We agree with Plaintiff.

"In pleading to a preceding pleading, a party shall set forth affirmatively . . . any . . . matter constituting an avoidance or affirmative defense." N.C. Gen. Stat. § 1A-1, Rule 8(c) (2019). "Such pleading shall contain a short and plain statement of any matter constituting an avoidance or affirmative defense sufficiently particular to give the court and the parties notice of the transactions, occurrences, or series of transactions or occurrences, intended to be proved." *Id.* "Failure to raise an affirmative defense in the pleadings generally results in a waiver thereof." *Robinson v. Powell*, 348 N.C. 562, 566, 500 S.E.2d 714, 717 (1998) (citation omitted).

While our state courts have not directly addressed whether the failure to serve notice under N.C. Gen. Stat. § 45-21.16 is an affirmative defense, a United States District Court in North Carolina analyzed a factually similar case under North Carolina law and concluded that "it is clear that the defense set forth in [N.C. Gen. Stat.] § 45-21.16 constitutes an affirmative defense within the meaning of [Federal] Rule 8(c)"[3] and must be affirmatively pled. *See Resolution Tr. Corp. v. Sw. Dev. Co.*, 807 F. Supp. 375, 378 (E.D.N.C. 1992), *amended*, 837 F. Supp. 122 (E.D.N.C. 1992), *aff'd in part, rev'd in part sub nom. Resolution Tr. Corp. v. Cunningham*, 14 F.3d 596 (4th Cir. 1993).

Our state courts have treated the failure to serve notice under N.C. Gen. Stat. § 45-21.16 as an affirmative defense in various contexts. *See, e.g., Barclays*

---

[3] Like N.C. Gen. Stat. § 1A-1, Rule 8(c), Rule 8(c) of the Federal Rules of Civil Procedure requires a party to plead affirmatively "any avoidance or affirmative defense." Fed. R. Civ. P. 8(c).

*Am./Mortg. Corp. v. Beca Enters.*, 116 N.C. App. 100, 101, 104, 446 S.E.2d 883, 885, 887 (1994) (affirming summary judgment in favor of defendant in a foreclosure action wherein defendant "filed answer asserting . . . the affirmative defense of plaintiff's failure to serve him with Notice of Hearing in the foreclosure proceeding as required by N.C. [Gen. Stat.] § 45-21.16 (1991)," and plaintiff "was unable to surmount the affirmative defense"); *Branch Banking & Tr. Co. v. Keesee*, 237 N.C. App. 99, 766 S.E.2d 699 (Table), 2014 WL 5334744 at *6 (2014) (unpublished) (affirming the trial court's order striking defendant's affirmative defense of inadequate notice under § 45-21.16 where the clerk concluded in the orders allowing the foreclosure sales that "[p]roper notice of hearing was given to all of those parties entitled to such notice under [N.C. Gen. Stat.] § 45-21.16" and authorized the substitute trustee to "exercise the power of sale," and defendants neither raised these issues at the foreclosure proceedings nor appealed the clerk's orders).

Furthermore, our Court has considered a statutory bar to recovery as an affirmative defense. *See Roberts v. Heffner*, 51 N.C. App. 646, 648, 277 S.E.2d 446, 448 (1981) (statutory bar to recovery for failure to obtain general contractor's license required under N.C. Gen. Stat. § 87-1 is an affirmative defense). In *Roberts*, our Court defined an affirmative defense as "[a] defense which introduces new matter in an attempt to avoid [a claim], regardless of the truth or falsity of the allegations in the [claim.]" *Id.* at 649, 277 S.E.2d at 448.

Measured against this standard, it is apparent that Defendants have employed N.C. Gen. Stat. § 45-21.16 as an affirmative defense by injecting an entirely new issue into the case for the purpose of defeating Plaintiff's claim for declaratory judgment. Accordingly, Defendants' use of N.C. Gen. Stat. § 45-21.16 falls within the purview of North Carolina Rule of Civil Procedure 8(c) and must be affirmatively pled.

Plaintiff alleged in its amended complaint:

> 13. The Hooper Deed of Trust was properly foreclosed via a Polk County special proceeding with File No. 90-SP-9. A Final Report was filed on June 19, 1990, and a Trustee's Deed from James Gary Roe, Substitute Trustee, to RF Acquisition Co., Inc., a Pennsylvania corporation, was recorded on June 19, 1990 in Deed Book 206, Page 1356. (These actions are collectively referred to as "the Hooper Foreclosure").

In their amended answer, Defendants responded:

> 13. Answering the allegations contained in Paragraph 13 of the Complaint, it is admitted that the Hooper deed of trust was foreclosed via a Special Proceeding in Polk County, North Carolina under docket number 90-SP-9 and that there was a Report of Sale filed on June 19, 1990, and a Trustee's deed from James Gary Roe, Substitute Trustee to RF Acquisition Company, a Pennsylvania corporation, recorded on June 19, 1990 in Book 206 page 1365; but except as admitted the allegations contained in Paragraph 13 of the Complaint are denied.

Defendants' admission in their answer that "the Hooper deed of trust was foreclosed via a Special Proceeding" coupled with the denial of all allegations "except as admitted" in that paragraph was not "a short and plain statement . . . sufficiently

- 16 -

particular to give the court and the parties notice" that Defendants intended to prove that they were not given notice of the underlying foreclosure proceeding. *See* N.C. Gen. Stat. § 1A-1, Rule 8(c). Defendants thus failed to affirmatively plead the defense of lack of notice under § 45-21.16.

"Although the failure to plead an affirmative defense ordinarily results in its waiver, the parties may still try the issue by express or implied consent." *Duke Univ. v. St. Paul Mercury Ins. Co.*, 95 N.C. App. 663, 673, 384 S.E.2d 36, 42 (1989); *see also* N.C. Gen. Stat. § 1A-1, Rule 15(b) (2019) ("When issues not raised by the pleadings are tried by the express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings.").

In this case, Defendants raised the defense of lack of notice for the first time in their memorandum of law opposing Plaintiff's motion for judgment on the pleadings, filed 10 September 2019—approximately 15 months after their answer and 6 months after their amended answer. In its reply brief, Plaintiff stated,

> In their memorandum, Defendants assert for the first time that in the Hooper Foreclosure the statutory notice requirements of [sic] were not met. In their Answer, Defendants did not plead any defect in the manner in which the Hooper Deed of Trust was foreclosed. Because the claim was not raised in the pleadings, such a claim should not be considered as part of a Motion for Judgment on the Pleadings.

The trial court heard Plaintiff's motion for judgment on the pleadings on 8 November 2019. As Plaintiff specifically objected to the issue of notice being

considered as part of the motion for judgment on the pleadings, the issue of notice was not heard by the trial court by the express or implied consent of the parties. As such, the issue of notice shall not be treated in all respects as if it had been raised in the pleadings, *see* N.C. Gen. Stat. § 1A-1, Rule 15(b), and Defendants waived this defense by failing to plead it in their answer, *see Robinson*, 348 N.C. at 566, 500 S.E.2d at 717 ("Failure to raise an affirmative defense in the pleadings generally results in a waiver thereof.").

2. *Effect of foreclosure on ratifying property owners*

Defendants next argue that the trial court erred by holding as a matter of law that the 1986 Restrictions were extinguished as to the 40 property owners who ratified them.[4] Defendants urge that the 1986 Restrictions imposed servitudes upon the Property that are enforceable by the ratifying owners and subsequent purchasers of their properties because the Restrictions run with the land.

"The purpose of foreclosure is to allow the mortgagee to realize on the security as it existed at the time the mortgage was executed. Consequently, . . . junior easements on the servient estate are terminated by out-of-court foreclosure under a power of sale found in a senior mortgage or deed of trust . . . ." Jon W. Bruce & James

---

[4] The trial court held that the 1986 Restrictions "were extinguished as to the property . . . consisting of approximately 231.20 acres, more or less, formerly being known generally as the Red Fox Country Club Golf Course . . . by the foreclosure of . . . the 'Hooper Deed of Trust.'"

W. Ely, Jr., *The Law of Easements & Licenses in Land* § 10:41 (2020). As our Supreme Court explained,

> If subsequent judgment creditors or litigants over the equity of redemption could "tie up" a first mortgage and effect its terms, it would seriously impair a legal contract. It may be "hard measure" to sell, but this is universally so. The mortgagee has a right to have her contract enforced under the plain terms of the mortgage. To hold otherwise would practically nullify the present system of mortgages and deeds in trust on land, so generally used to secure indebtedness and seriously hamper business.

*Leak v. Armfield*, 187 N.C. 625, 628, 122 S.E. 393, 394 (1924).

As explained above, the 1986 Restrictions were extinguished by the foreclosure of the Hooper deed of trust. Thus, as a matter of law, the 1986 Restrictions no longer have force and effect on the Property. *See St. Louis Union Tr.*, 211 N.C. at 344, 190 S.E. at 530 ("Title acquired by foreclosure relates back to the date of the mortgage, so as to cut off intervening equities and rights."). Because the Property is no longer burdened by the 1986 Restrictions, the 40 ratifying property owners are not entitled to any rights in the Property arising from the 1986 Restrictions. *See Dixieland Realty*, 272 N.C. at 175, 158 S.E.2d at 10 (encumbrances that trustor imposed on property after execution and recording of deed of trust are extinguished by sale under foreclosure of senior instrument); *Dunn*, 148 N.C. at 282, 61 S.E. at 681 (sale under deed of trust extinguishes all encumbrances executed after deed of trust).

*3. Equitable exception to extinguishment by foreclosure*

Defendants also argue that this Court should follow our Supreme Court's opinion in *Dixieland Realty*, and make an equitable exception in this case to the general rule that all encumbrances imposed by the trustor on the property after the execution and recording of the senior deed of trust are extinguished by sale under foreclosure of the senior instrument. In *Dixieland Realty*, the Supreme Court affirmed the settled rule of extinguishment by foreclosure. 272 N.C. at 175, 158 S.E.2d at 10. However, the Court formulated a narrow exception to the rule by holding that the foreclosure of the senior deed of trust did not extinguish the lien of the junior deed of trust, because the trustor who intended to convey the land described therein—the land the grantee expected to acquire as security for his debt— purchased the property at the senior mortgage sale following foreclosure. *Id.* at 180, 158 S.E.2d at 13-14. *See also* Restatement (Third) of Property (Mortgages) § 7.1 (1997) (It is "[o]nly in the rare instance where the mortgagor is the foreclosure purchaser do fairness and policy considerations dictate a departure from" the principle that foreclosure extinguishes junior liens and encumbrances). The instant case does not involve a trustor who purchased his own secured property at a senior mortgage sale following foreclosure. The "rare instance" utilized in *Dixieland Realty* is distinguishable and not applicable to the facts of this case. *See id.*

*4. Estoppel*

Defendants argue that Plaintiff should be equitably estopped from asserting that the 1986 Restrictions were extinguished by the Hooper foreclosure.[5]

North Carolina courts have long recognized the doctrine of equitable estoppel, which applies

> "when any one, by his acts, representations, or admissions, or by his silence when he ought to speak out, intentionally or through culpable negligence induces another to believe certain facts exist, and such other rightfully relies and acts on such belief, so that he will be prejudiced if the former is permitted to deny the existence of such facts."
>
> In such a situation, the party whose words or conduct induced another's detrimental reliance may be estopped to deny the truth of his earlier representations in the interests of fairness to the other party. In applying the doctrine, a court must consider the conduct of both parties to determine whether each has "conformed to strict standards of equity with regard to the matter at issue."

*Whitacre P'ship v. Biosignia, Inc.*, 358 N.C. 1, 17, 591 S.E.2d 870, 881 (2004) (quotation marks and citations omitted). "There need not be actual fraud, bad faith, or an intent to mislead or deceive for the doctrine of equitable estoppel to apply." *Gore v. Myrtle/Mueller*, 362 N.C. 27, 33, 653 S.E.2d 400, 405 (2007).

> This Court has also recognized that branch of equitable estoppel known as "quasi-estoppel" or "estoppel by benefit."

---

[5] Although Defendants refer to this estoppel argument as a counterclaim in their appellate brief, in their amended answer they pled estoppel as their sixth and seventh defenses. Generally, equitable estoppel is an affirmative defense, *see Chapel H.O.M. Assocs., LLC v. RME Mgmt., LLC*, 256 N.C. App. 625, 628, 808 S.E.2d 576, 579 (2017), and we will address it as a defense. Defendants make no argument on appeal regarding their defenses of easement by implied dedication and appurtenant easement by prior use. Thus, we deem these arguments abandoned. N.C. R. App. P. 28(a).

> Under a quasi-estoppel theory, a party who accepts a transaction or instrument and then accepts benefits under it may be estopped to take a later position inconsistent with the prior acceptance of that same transaction or instrument. The key distinction between quasi-estoppel and equitable estoppel is that the former may operate without detrimental reliance on the part of the party invoking the estoppel. In comparison to equitable estoppel, quasi-estoppel is inherently flexible and cannot be reduced to any rigid formulation.
> . . . .
> "[T]he essential purpose of quasi-estoppel . . . is to prevent a party from benefitting by taking two clearly inconsistent positions."

*Whitacre*, 358 N.C. at 18-19, 591 S.E.2d at 881-82 (citations omitted).

The 1986 Restrictions gave the owner of the Property a right of first refusal to purchase a residential lot being resold to a third party. Between 5 August 1992 and 29 November 2017, Plaintiff signed 115 Waiver of Right to Purchase instruments, at the request of the sellers of the lots. Defendants argue, "If it had been the belief of [Plaintiff] that the 1986 Restrictions were extinguished by the foreclosure of the Hooper deed of trust, the Waivers would not have been necessary."

As Defendants concede in their brief, both the 1966 Restrictions and the 1986 Restrictions gave the owner of the Property a right of first refusal to purchase residential lots being resold to third parties. The waivers Plaintiff signed stated (1) that the two declarations of restrictions granting the owner of the Property a right of first refusal had been recorded, and (2) that the parties selling the lots "requested

[Plaintiff] to approve said transfer[s] for the purpose of complying with and evincing compliance with" both declarations of restrictions.

The waivers were signed at the sellers' requests and merely clarified that Plaintiff had no right to repurchase the lots. The waivers did not state that the 1986 Restrictions were still in effect and did not purport to convey any interest in the Property to Defendants. Even if one could infer from this conduct that Plaintiff understood the 1986 Restrictions to still be in effect, by executing the waivers upon request, Plaintiff made no representation as to the legal effectiveness of the 1986 Restrictions.

Accordingly, by arguing before the trial court that the 1986 Restrictions were extinguished by foreclosure, Plaintiff was not denying the truth of any earlier representations or taking a position inconsistent with an earlier position. Thus, neither the principle of equitable estoppel nor the principle of quasi-estoppel should be applied under these facts to preclude Plaintiff from asserting that the foreclosure extinguished the 1986 Restrictions.

Defendants make no argument that the 1986 Restrictions created an express easement by restricting the use of the land to a golf course. Moreover, section 42 of the 1986 Restrictions expressly disclaims any affirmative obligation by the owner of the Property. "Absent a specific restriction within the Declaration, the law presumes

the free and unrestricted use of land." *Friends of Crooked Creek, L.L.C. v. C.C. Partners, Inc.*, 254 N.C. App. 384, 391, 802 S.E.2d 908, 913 (2017) (citation omitted).

In summary, Plaintiff was entitled to judgment as a matter of law that the 1986 Restrictions were extinguished by foreclosure of the earlier recorded Hooper deed of trust. Thus, the trial court did not err by granting judgment on the pleadings in favor of Plaintiff.

## C. Defendants' Counterclaims

Defendants argue generally that the trial court erred by dismissing Defendants' counterclaims with prejudice, as there are genuine issues of material fact and Plaintiff is not entitled to judgment as a matter of law. Defendants assert that the trial court erred by dismissing their counterclaim seeking a declaratory judgment that the Property can only be used as a golf course. Defendants base this argument upon their contention that Plaintiff should be "equitably estopped from denying the easements created" by Plaintiff's representations, including its use of unrecorded plats, when selling properties in Red Fox Run. Defendants' argument is properly characterized as easement by estoppel.[6]

In its motion for judgment on the pleadings, Plaintiff moved to dismiss Defendants' counterclaim for declaratory judgment for failure to state a claim upon

---

[6] Defendants do not argue on appeal that the trial court erred by dismissing their counterclaims for unjust enrichment, constructive trust, and appointment of receiver. We deem these arguments abandoned. N.C. R. App. P. 28(a).

which relief may be granted. The standard of review of an order granting a motion to dismiss for failure to state a claim is "whether the [counterclaim] states a claim for which relief can be granted under some legal theory when the [counterclaim] is liberally construed and all the allegations included therein are taken as true." *Wells Fargo Bank, N.A. v. Corneal*, 238 N.C. App. 192, 195, 767 S.E.2d 374, 377 (2014). Dismissal is proper when the counterclaim on its face reveals that no law supports the claim. *Id.* "We conduct a de novo review of the pleadings to determine their legal sufficiency." *Id.*

1. *Easements, generally*

"An easement is a right to make some use of land owned by another . . . ." *Builders Supplies Co. of Goldsboro, N.C., Inc. v. Gainey*, 282 N.C. 261, 266, 192 S.E.2d 449, 453 (1972) (citations omitted). "An appurtenant easement is an easement created for the purpose of benefiting particular land. This easement attaches to, passes with and is an incident of ownership of the particular land." *Shear v. Stevens Bldg. Co.*, 107 N.C. App. 154, 161, 418 S.E.2d 841, 846 (1992) (citation omitted). "In easements, as in deeds generally, the intention of the parties is determined by a fair interpretation of the grant." *Borders v. Yarbrough*, 237 N.C. 540, 542, 75 S.E.2d 541, 543 (1953) (citation omitted).

## 2. *Easement by estoppel*

Defendants argue that they are entitled to easements created when Plaintiff sold properties based on (1) representations made in printed marketing materials displayed in the sales office—including unrecorded plats depicting a golf course and brochures describing a golf course community; and (2) oral representations made to prospective buyers in the sales office, in which Plaintiff indicated that the lots for sale were in a golf course community. Also, Defendants argue that the mere existence of an operational golf course and golf amenities at the time prospective buyers purchased their lots affirmed these representations. Defendants contend that they detrimentally relied on these representations and that Plaintiff should be "equitably estopped from denying the existence of the easements thus created" "by the sale of the property off the plats." We disagree.

The argument that courts should apply equitable estoppel principles to create an easement based on representations in a developer's marketing materials was rejected by this Court in *Crooked Creek*. *See* 254 N.C. App. at 394, 802 S.E.2d at 915. This Court explained:

> While Crooked Creek subdivision may have been contemplated and marketed as a golf course community to induce Plaintiffs to purchase lots in the subdivision, no case has recognized an implied easement or restrictive covenants being imposed on undeveloped land, based upon statements in marketing materials. Courts have recognized marketing materials as further demonstrating the expressed intent of the developer, but only where a

recorded instrument exists to demonstrate the intent to encumber and restrict the land.

*Id.* (citations omitted).

In this case, taking as true Defendants' allegations that Plaintiff represented to prospective purchasers that the Property would always be used as a golf course, Defendants fail to state a claim upon which relief may be granted, because there is no cognizable legal claim in North Carolina that an easement by estoppel restricting land has been created based on marketing materials, unrecorded plats, or plats not referenced by deed. *See id.* The trial court did not err by dismissing Defendants' counterclaim seeking declaratory judgment on this basis.

*3. Easement-by-plat*

Construing Defendants' brief generously, Defendants argue that they are entitled to an easement-by-plat. We disagree.

An easement may be created by plat, based on the following settled principle:

> when the owner of land, located within or without a city or town, has it subdivided and platted into lots, streets, alleys, and parks, and sells and conveys the lots or any of them with reference to the plat, nothing else appearing, he thereby dedicates the streets, alleys, and parks, and all of them, to the use of the purchasers, and those claiming under them, and of the public.

*Gaither v. Albemarle Hosp., Inc.*, 235 N.C. 431, 443, 70 S.E.2d 680, 690 (1952).

> Th[is] general rule is based on principles of equitable estoppel, because purchasers who buy lots with reference to a plat are induced to rely on the implied representation

> that the "streets and alleys, courts and parks" shown thereon will be kept open for their benefit. Consequently, the grantor of the lots is "equitably estopped, as well in reference to the public as to his grantees, from denying the existence of the easement thus created."

*Harry v. Crescent Res., Inc.*, 136 N.C. App. 71, 77, 523 S.E.2d 118, 122 (1999) (quoting *Gaither*, 235 N.C. at 444, 70 S.E.2d at 690). "For an easement implied-by-plat to be recognized, the plat must show the developer clearly intended to restrict the use of the land at the time of recording for the benefit of all lot owners." *Crooked Creek*, 254 N.C. App. at 392, 802 S.E.2d at 914 (citing *Crescent Res.*, 136 N.C. App. at 77, 523 S.E.2d at 122 ("depiction of remnant parcels on the plat was insufficient to show a clear intent by the developer to grant an easement setting them aside as open space")).

"[A] map or plat, referred to in a deed, becomes a part of the deed, as if it were written therein. A recorded plat becomes part of the description and is subject to the same kind of construction as to errors." *Stines v. Willyng, Inc.*, 81 N.C. App. 98, 101, 344 S.E.2d 546, 548 (1986) (quotation marks, ellipsis, and citations omitted). "[A] description which omits one or more of the boundaries, and leaves the quantity of land undetermined, is insufficient." *Id.* (brackets and citations omitted) (plat insufficient to create easement when "[n]othing on the plat or referred to therein would enable a title attorney to determine the precise boundaries of the area burdened with the park easement").

In *Crooked Creek*, this Court considered whether recorded subdivision plats created an easement implied-by-plat in a golf course. Plats recorded in 1992, 1993, and 1994 showed residential lots, but none depicted a golf course. 254 N.C. App. at 385, 392, 802 S.E.2d at 910, 914. A survey plat, completed to reflect undeveloped portions of the property to be sold to a third party, was recorded in 1995. *Id.* at 386, 802 S.E.2d at 910. "[T]he survey plat reflect[ed] five un-subdivided tracts of land labeled as 'A, B, C, D and F,' some previously subdivided lots, and the dotted line location of the golf course greens and fairways. Metes and bounds descriptions [we]re shown *only* for the five un-subdivided tracts." *Id.* at 392, 802 S.E.2d at 914. Plaintiffs' deeds did not reference the survey plat. *Id.* at 393, 802 S.E.2d at 914. The plats did not create an easement implied-by-plat for two reasons. First, none of plaintiffs' deeds referenced a plat recorded by the developer that depicted a golf course. *Id.* Second, even if plaintiffs' deeds had referenced the survey plat, the survey plat depicting a dotted outline of a golf course did not bind the land for golf use for the benefit of plaintiffs or create any easement or common use right to the property. *Id.* Accordingly, the recorded plats did not impose an easement-by-plat, requiring the golf course property to be perpetually used only for golf. *Id.*

In this case, Defendants alleged, in relevant part: (a) the original developer recorded subdivision plats for Red Fox Run Sections A, B, C, D, and E, which showed lots by number and identified contiguous holes on the golf course; (b) property was

conveyed to third parties by deeds to each of the lots in Sections A, B, C, D, and E, which referenced the relevant recorded plat; and (c) common areas and open spaces described in the 1986 Restrictions are not identified on the plats.

The recorded subdivision plats for Red Fox Run Sections A, B, C, D, and E depict portions of the development. The residential lot lines are depicted with solid lines and have metes and bounds descriptions. While golf course holes are depicted adjacent to some of the residential lots, as was shown in *Crooked Creek*, the plats do not include metes and bounds descriptions of the outer boundaries of the golf course or the Property. Indeed, similar to the plats in *Crooked Creek*, the outer boundaries of the Property, and thus, the golf course, are either not marked at all or are depicted with dotted lines. The description, as illustrated by the plats, is insufficient to create a golf course easement, as it "omits one or more of the boundaries, and leaves the quantity of land undetermined." *Stines*, 81 N.C. App. at 101, 344 S.E.2d at 548. Because "[n]othing on the plat or referred to therein would enable a title attorney to determine the precise boundaries of the area burdened with the [golf course] easement," the plat is not capable of describing or reducing an easement in the golf course to a certainty. *Id.* Accordingly, the trial court did not err by concluding that the subdivision plats did not create easements restricting use of the Property to a golf course.

## IV. Conclusion

The trial court did not err by ruling on the motion for judgment on the pleadings in favor of Plaintiff, because (1) the trial court was not required to treat the motion as one for summary judgment; and (2) Plaintiff was entitled to judgment as a matter of law that the 1986 Restrictions were extinguished by foreclosure of the Hooper deed of trust. The trial court did not err by dismissing with prejudice Defendants' counterclaim seeking declaratory judgment that Defendants have an enforceable right to require the Property to be used as a golf course. The order of the trial court is affirmed.

AFFIRMED.

Chief Judge McGEE and Judge TYSON concur.